CASE 29.—ACTION BY BETTIE GORDON AND OTHERS AGAINST W. F. SIMMONS.—January 12, 1910.

## Gordon, &c. v. Simmons

Appeal from Trigg Circuit Court.

J. T. HANBERRY, Circuit Judge.

Judgment for defendant, plaintiffs appeal.—Reversed.

1. Adverse Possession—Sufficiency of Evidence.—Defendant does not prove adverse possession for 15 years of land under an oral trade therefor by B. with G., the then owner thereof, though two or three witnesses testified the exchange of lands between G. and B. was made, and a line dividing the lands exchanged was marked, 25 years or more ago; they being evidently mistaken, the petition alleging, and the answer not denying, that G. did not become owner of the land till a certain date, less than 15 years before the commencement of the action, and the deed conveying the land to G. bearing such date, and this being conclusive of such fact.

2. Frauds, Statute of—Exchange of Lands.—While an oral agree ment fixing a dividing line between the adjoining lands of antagonistic parties is not within the statute of frauds, an oral exchange of lands is within it, like an oral sale of lands.

3. Compromise and Settlement—Evidence—Insufficiency.—Evidence held not sufficient to show that an agreement settling a controversy as to land was signed by defendant without knowledge of its contents, and was procured by the fraud of plaintiff.

M. M. HORNBERRY and JOHN D. SHAW for appellants.

JOHN W. KELLY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

vol. 136—18

The appellant, Bettie Gordon, widow, and others, heirs at law of A. J. Gordon, deceased, brought suit in the court below to recover of the appellee, W. J. Simmons, a parcel of land described in the petition, which they claim to own and allege to be wrongfully in appellee's possession; also to recover of the latter damages for its unlawful detention and use.

It appears from the record that A. J. Gordon became the owner in 1894 of a 100-acre tract of land known as the "House survey." Included within the lines of the House survey, though not a part thereof, was a 50-acre tract known as the "Turner Mashburn or Boren survey." Appellants live, as did A. J. Gordon, at the time of his death, upon the House 100-acre survey. Appellee owns and is in possession of the 50-acre Turner Mashburn or Boren survey. The land appellants seek to recover consists of about 20 acres of the House survey alleged to be wrongfully held by appellee.

It is alleged in the petition that a controversy arose between appellants and the appellee, Simmons, shortly before the institution of the action as to the location of the lines of their respective lands, in which controversy appellee was setting up claim to the 20-acres of the House survey in question by virtue of an alleged exchange thereof made by A. J. Gordon, deceased, with appellee's remote vendor, Boren, for 14 acres of the Turner Mashburn 50-acre survey, and also to the 14 acres last mentioned as well, and that, in order to settle the controversy without suit, appellants and appellee entered into a written agreement whereby appellants released to appellee all that part or parcel of land known as the Turner Mashburn survey, in consideration of which appellee obligated himself to release and surrender to appellants all

that part of the House survey claimed by him, the original line of both the House and Turner Mashburn surveys to be ascertained by a survey to be made by the surveyor of Trigg county, each party to pay one-half the costs of such survey; that, pursuant to this agreement, the lines of the House and Turner Mashburn surveys were run and established by the surveyor of Trigg county as claimed by appellants, but that, notwithstanding such agreement and settlement of the controversy between the parties, appellee, in violation thereof, took possession of the 20 acres of the House survey which he had agreed to surrender to appellants, and proceeded to cultivate same.

Appellee, by answer, attempted to justify his holding of the 20 acres of the House land upon the ground that his remote vendor, Boren, while owner of the 50-acre tract of land, made a verbal swap or exchange of 14 acres thereof to A. J. Gordon, then the owner of the House 100-acre tract, for the 20 acres of the latter tract in controversy, and that, pursuant to such exchange, Boren and Gardner established an agreed line between the lands exchanged, and each surrendered to the other, without executing deeds therefor, the land received in the exchange. It was further alleged in the answer that appellee and his vendors, immediate and remote, have had and held the actual adverse possession of the 20 acres received by Boren in the exchange with Gordon for more than fifteen years before the institution of appellants' action, which it was claimed entitled appellee to rely upon the statute of limitations in bar of the action; the statute being duly pleaded. It was further alleged in appellee's answer that he signed and acknowledged the writing referred to without knowledge of its contents and by the fraud and pro-

curement of the appellant Bettie Gordon and her agent, A. S. Ford.

Appellants, by reply, controverted the affirmative matter of the answer. The trial resulted in a verdict and judgment in appellee's favor, and appellants, having been refused a new trial by the circuit court, prosecute this appeal.

It appears from the evidence found in the record, and is conceded by the parties, that when appellee's remote vendor, Boren, owned the 50-acre Turner Mashburn land, he and A. J. Gordon attempted a verbal exchange of lands; that is, Boren agreed to exchange with Gordon, then owner of the 100-acre House survey, 14 acres of the Turner Mashburn land for 20 acres of the House land, and that Boren and Gordon at the time marked a dividing line across the Turner Mashburn land from the south to the north boundary of the House tract on either side of the Turner Mashburn land which left the 14 acres received by Gordon in the exchange east of the division line, and the 20 acres received by Boren west of that line. The evidence is not definite as to when or to what extent either Gordon or Boren asserted possession over the land received by him in the exchange.

It is clear, however, that neither made a deed to the other, but apparent that appellants were willing after appellee acquired the Turner Mashburn or Boren land to let the exchange as made by A. J. Gordon and appellee stand. With this, however, appellee according to the evidence did not appear satisfied, for he set up claim to the 14 acres received by Gordon in the exchange as well as the 20 acres thereby received by Boren. This state of case raised the controversy between appellee and appellants resulting in the writ-

ten agreement whereby the previous exchange of lands between A. J. Gordon and Boren was ignored, and the parties obligated themselves that appellants should hold the House land of 100 acres according to the lines thereof to be established by the county surveyor, and appellee the Turner Mashburn 50-acre tract according to its boundary as established by the surveyor.

We fail to find from the record that appellee proved possession on the part of himself or vendors of the land in controversy for as much as 15 years before the institution of appellant's action. He did, it is true, prove by two or three witnesses that the exchange of lands between A. J. Gordon and Boren was made and a line dividing the lands exchanged, marked, and established 25 or more years ago; but these witnesses were evidently mistaken as to the date of the exchange and making of the line, for it was alleged in the petition, and not denied by the answer that A. J. Gordon did not become the owner of the House 100-acre tract of land until December 17, 1894, and as the deed conveying him the land bears that date, it, with the undenied averment of the petition, conclusively established the fact.    This being true, as is the further fact that appellants' action was instituted by the filing of the petition and issual of a summons November 6, 1907, it necessarily follows that A. J. Gordon did not own the House land as far back as the two witnesses referred to testified he exchanged lands with Boren. Indeed, to be precise, it is certain that Gordon and his widow and children following his death, had owned the House land only 12 years, 10 months and 19 days, when this action was instituted.    It is therefore patent that appellee

and his vendors could not have had actual, adverse, or even constructive possession of the 20 acres of land in controversy by virtue of an exchange of lands between Boren and Gorden for as much as 15 years before the institution of appellants' action to recover it.

An oral agreement fixing a dividing line between the adjoining lands of antagonistic parties has by this court been held not within the statute of frauds and perjuries; it being the policy of the courts to approve and uphold such agreements as tending to discourage controversies between neighbors and prevent litigation. Jamison v. Petit, 6 Bush, 670; Grigsby v. Combs, 21 S. W. 37, 14 Ky. Law Rep. 652; Campbell v. Campbell, 64 S. W. 458, 23 Ky. Law Rep. 870; Frazier, etc., v. Mineral Development Co., 86 S. W. 983, 27 Ky. Law Rep. 815.

But an oral exchange of lands is within the statute, and can no more be enforced than can an oral or parol sale of land. It is true that cases may be found in which the courts have refused to disturb such exchange of lands; but it was only where possession was taken by the parties of the lands received respectively by the exchange and actually and adversely held for as much as 15 years. Appellee has shown no such possession. So, if the written agreement he made with appellants were out of the way, he would nevertheless be unable to hold the land in controversy by reason of the exchange between Gordon and Boren.

It is his contention that the writing was intended to set forth an agreement between himself and appellants to cause to be surveyed and ascertained the line dividing the lands, exchanged by Gordon and Boren, and that he believed it expressed such agreement when he signed and acknowledged it, but that ap-

pellant's agent, Ford, fraudulently caused the writing to be prepared in its present form and language, and induced him to sign it without informing him of its contents or meaning. This contention is not sustained by appellee's own testimony. He did say it was not understood by him, but admitted that he had it in his hands, and was thereby given an opportunity to read it. He also failed to deny that it was read to him by Ford. The three attesting witnesses to the writing were Ford, Williams and Simmons; the latter being a brother of appellee. Ford testified that the paper was written as directed by the parties; and he and Williams also testified that Ford placed the writing in appellee's hands before it was signed by him, and that the latter held it for some time, appeared to be reading it, and had ample time to do so; that Ford received the paper after appellee had thus examined it, and then read and explained it to appellee, who thereupon expressed his satisfaction with the paper and signed and acknowledged it, following which it was duly recorded.

Simmons, the third attesting witness, substantially corroborates both Ford and Williams as to what occurred when appellee executed the writing, and two other witnesses to whom appellee talked after signing the writing testified as to statements from him manifesting his knowledge of its contents and satisfaction with its provisions. According to the survey made in pursuance of the written agreement, the lines of the House 100-acre tract are as claimed by appellants, and they include and show appellants to be the owners of the land in controversy; no evidence being offered by appellee to prove that it is not a part of the House tract.

Our reading of the record convinces us that the verdict of the jury was flagrantly against the evidence; indeed, unauthorized by it; and, in view of the evidence of appellants' right to the land in controversy and the absence of evidence to support appellee's defense, the trial court should have peremptorily instructed the jury to find for appellants as to the ownership of the land, no damage being shown on account of its detention or for injury to it.

This conclusion makes it unnecessary for us to consider the objections urged by appellants to the instructions that were given by the court, except to say that the instructions should not have been given. Only a peremptory instruction as indicated would have been proper.

Wherefore the judgment is reversed and cause remanded for a new trial consistent with the opinion.