## Mosley v. Eversole.

(Decided June 4, 1912.)

## Appeal from Leslie Circuit Court.

1. Land—Question of Ownership—Division Line—When Such Line Should Be Accepted by the Courts.—Where a division line has for a long period of time been recognized by all of the parties in interest, it should be so accepted by the courts.

2. Land—Agreed Division Line.—Absence of legal title, or an incomplete title in the claimants, will not render ineffectual as between them and their privies, or vendees with notice, such agreed division line.

3. Land—Division Line.—Until this suit was filed, no one ever objected to the line in controversy which was established fifty or sixty years ago, and those who acquiesced for all this time will not now be permitted to question it.

CLEON K. CALVERT, H. C. FAULKNER, T. G. LEWIS and M. C. BEGLEY for appellant.

J. M. BICKNELL for appellee.

The question presented by this appeal is which one, the appellant or the appellee, owns the small tract of land in controversy. It is unenclosed, timbered land, situated on the west bank of the Middle Fork of Kentucky River, and is in what is now Leslie county. Both parties attempt to trace their title back to the parties who owned the land when it was included in Clay county, and the opposite, or east bank of Middle Fork, was in Perry county.

The record shows that in 1847, and for some time previous thereto, C. H. Godsey was holding, claiming to own residing upon a tract of land in what was then Clay county on the west side of Middle Fork; that William Muncy was living upon and claiming as his, a tract of land just above and on the same side of Middle Fork, and that no one lived upon or claimed any land between Muncy and Godsey. As appears from the record the nature and extent of their claims are rather vague and indefinite, but it is certain that each was asserting claim of ownership and there was no other conflicting claimant, and the only dispute was between themselves. It also appears that the claims of Godsey and Muncy extended across Middle Fork and into what was then Perry county. The first attempt to fix a precise boundary to any of these lands was in 1847, when Muncy employed Felix J. Gilbert, a land surveyor, to make a survey of the lands which he, Muncy, was holding on the Clay County side of the river preparatory to taking a patent thereon from the Commonwealth. No patent was ever issued to Muncy, however. It seems that at the time Muncy could not or did not pay the surveyor for his services, and as a security for his fees Gilbert was to hold the papers, or file them in his name, until the fees were paid. There was no change in the relation of the parties until 1849 when, as the evidence clearly shows, Muncy and Godsey selected arbitrators to go upon and establish a division line between them. It is undisputed that these arbitrators did establish such a line between their lands on the Perry county side of the river, and that it began at a large water oak standing on the east bank of Middle Fork running thence N. 80 E., and that the tree was marked on both sides in the line; that is, the tree was

marked on its east side, and also in the line on its west side towards Clay county.

It is contended by appellant that these arbitrators at the same time extended this line "straight" or "square" across the river, on the same course or direction to a point on top of the ridge in Clay county, or to the west limits of Godsey's and Muncy's lands, and thus established the line between them in Clay county. It is undisputed also that the line, to the extent the arbitrators established it, was accepted by the parties in interest.

If this line was extended by the arbitrators across the river from the water oak into Clay county, it cut off from Muncy and gave to Godsey a small part of the survey, on the north end, which Gilbert had made for him two years before. It is that tract on the north end of the survey which is in controversy.

In 1854 Muncy sold by a deed all of his land on the Perry county side to Sam Morgan, and the division line established by the arbitrators is referred to and made the south boundary of the land thus conveyed. The evidence tends to show that at the same time Morgan also purchased of Muncy all of Muncy's land in Clay county, or on the west side of Middle Fork. It seems that the fees of Surveyor Gilbert were in some way satisfied, and Morgan took an assignment of the survey from Gilbert, and in 1858 patent No. 29793 was issued to Morgan as the assignee of Gilbert. The boundary set up in this patent is the original survey which Gilbert had made for Muncy two years before the division line was established by the arbitrators. Until his death, Godsey lived on, and claimed as his, the land on Middle Fork north of the established division line, and then his widow, Lucy, who afterwards married Roberts, resided there and claimed it until 1882, when she by deed sold it to Henry Mosley. This deed was not recorded until a short time before this suit was filed by Sam Morgan's vendee, Eversole, who is the appellee here. But the evidence shows that both Morgan and Eversole knew that appellee and his vendors were and had been occupying and claiming up to the agreed division line and which line is named as the south boundary in the deed above referred to from Lucy Roberts to Henry Mosley. After the death of Henry Mosley title to nine-elevenths of the land that he claimed vested in appellant, Elihu Mosley, by descent and purchase.

Sam Morgan conveyed to appellee, Eversole, the boun-

dary set up in the patent 29793 and Eversole filed this suit against Elihu Mosley and the effect of which was to assert ownership over the whole patent survey and the question is, whether he can claim beyond, or north of the agreed line established by the arbitrators.

Sam Morgan's father, Jesse Morgan, was one of the arbitrators, and an eighty-year-old brother of Sam, J. G. Morgan, swears that the father, Jesse Morgan, claimed to have made the purchase from Muncy of this land for his son Sam down to the agreed division line. Sam admits that he had heard of this line but claims that it applied only to the lands of Godsey and Muncy across the river in Perry county. But Sam Morgan and his vendee, Eversole, must have known that Godsey, Roberts, and the Mosleys in succession were claiming and exercising ownership and control up to the agreed line, and over that portion of the Morgan patent survey in Clay county which extended north of the line. Mrs. Roberts and the Mosleys used parts of it repeatedly as a sugar orchard and cut and sold timber from it. Eversole, appellee, does not deny that on one occasion timber was sold from this land by the Mosleys to his company and cut from it by their direction and it was paid for by appellee in person to appellant, and this was prior to his purchase from Morgan.

While Sam Morgan seems never to have been satisfied with the location of the line, yet the proof conclusively shows that he accepted it as a fact, and by his conduct recognized its existence and adhered to it. He took no steps to prevent the claimant under Godsey from asserting and exercising ownership up to the line. This unquestioned recognition of the line and observance of its binding force for more than sixty years is sufficient to estop him and his vendee from disturbing the title of those who have been openly claiming to the line for the same length of time. The evidence disclosed repeated instances of Morgan pointing out the line in Clay county and calling the attention of various people to it.

Appellee's counsel ably argues that the division line is invalid and of no force because at the time it was established neither Godsey nor Muncy had a legal title to the land affected. This seems to have been the opinion of the lower court, whose finding was, "that there was no conditional line recognized by law." But since it is clear that it was recognized by all the parties in interest, it should be so accepted by the courts. We do

not think absence of legal title or an incomplete title in the claimants will render ineffectual as between them and their privies, or vendees with notice, such agreed division line. At the time, Godsey and Muncy were the only claimants, and their possession was undisputed. Until this suit was filed, no one ever objected to the line as established, or to their right to establish it. Under such circumstances the law will presume they were entitled to the land which they separated by the line, and will not now permit those who have acquiesced for all this time, to question it. The record does not show the character of title, if any, possessed by Godsey and Muncy, adjacent to the division line, nor the nature of the dispute between them which called for arbitration; but after such a long lapse of time it must be presumed they had some claim to the property, and that there was a dispute is sufficiently evident by the fact that the arbitrators acted and established the line. It is true that the boundaries claimed by Godsey and Muncy are vague, but none of the lines are here involved except the division line between their lands, and the position of this line is not seriously questioned. As to this division line the issue is as to its effect.

Appellee insists that the principles of law upholding verbal agreements for a division line are applicable only to the settlement of "disputes" between "landowners." Certainly, division line agreements, verbal or otherwise, between mere claimants, or those in possession without legal title, will not be enforced against such holders of the legal title as become so while ignorant of and not privies to the claimant or his equities. But where all the parties in interest have for a period of sixty years recognized and accepted a division line, none of them will now be heard to say that it is invalid, nor will this court disturb it or permit any of them to claim beyond it.

For these reasons, the judgment of the lower court is reversed and cause remanded with directions to dismiss the petition.