## Evans v. Bates, et al.

(Decided October 2, 1913).

### Appeal from Knott Circuit Court.

1. Patents—Parol Agreement on Dividing Line.—Where patents conflict and there is doubt as to their true location, a parol agreement on a dividing line which has been acquiesced in for many years, will be upheld and enforced.

2. Patents—Land—Agreement Establishing Division Line.—After the death of all the parties, where the line is plainly marked. and has been recognized for a great number of years, each of the parties holding to the line, an agreement establishing the line may be inferred from the conduct of the parties and the circumstances.

3. Patents—Location of Patent.—After the death of the original patentee, and after his vendees have held the land for more than. forty years as included in the patent, the location of the patent, as made by the patentee, will not be disturbed and the land will not be regarded as vacant, it being evident from the patent itself, that some of its calls were not run, and its true location being a matter of doubt.

BAILEY P. WOOTTON, JESSE MORGAN for appellant.

O'REAR & WILLIAMS, SMITH & COMBS, J. M. BAKER, S. J. KILGORE and CHAS. H. MORRIS for appellees.

Opinion of the Court by Chief Justice Hobson—Affirming.

Robert Bates and Shade Combs brought this suit against Alvin Evans to quiet their title to a tract of land in Knott County. Evans filed an answer in which he denied the plaintiff's title to the land, asserting title in himself and praying that his title be quieted. The facts

of the case are these: Washington Combs settled near the mouth of Buckeye, a tributary of the Kentucky river. James Combs settled on Elk Fork, another tributary of the Kentucky river. There is a high ridge separating the headwaters of these two streams. Samuel Napier, a son-in-law of Washington Combs, made a survey of 500 acres of land on Buckeye on October 4, 1844, and this survey was conveyed by Napier to Washington Combs on March 6, 1848. James Combs made a survey of 400 acres on November 17, 1844; also a survey for 1050 acres on August 7, 1850. The Napier survey of 500 acres lay mostly on Buckeye, but if run out according to its calls, extended over the ridge and included several hundred acres of land on the north side of it. The 400 acre patent of James Combs lay mostly on Elk Fork, but extended over the ridge and embraced some land on the south side. The same is true of his 1050 acres patent. Alvin Evans is a grandson of Washington Combs, and claims under him; Robert Bates and Shade Combs claim under James Combs. The land in controversy lies on the north side of the dividing ridge, and is mainly within the Napier 500 acre survey as located by the surveyors. Evans' claim to it rests upon the ground that he has the older title. The claim of Robert Bates and Shade Combs to it rests upon the ground that a division line was agreed to between the parties running with the top of the ridge, and that this agreed line, or, as it is called by the witnesses, conditional line, having been acquiesced in for many years, must be regarded as the true line between them. The circuit court gave judgment in favor of the plaintiffs, Bates and Combs. Evans appeals.

While the Napier survey is the oldest, it was not filed in the register's office, and a patent obtained until after James Combs had obtained his patent for 400 acres; and under the law then in force, the 400 acre patent was superior to it, the survey not having been registered in proper time. (Payne v. Riley, 4 Dana 38). But these surveys were made so near the same time, and by men living in the neighborhood, that it is very reasonable they were not intended to conflict one with the other; or that when a conflict was discovered, that the parties would agree upon a line between them so as to settle all dispute. Each had taken up a large body of land, and from a custom well known in eastern Kentucky, each would regard the top of the dividing ridge as the natural boundary between

them. The evidence in the record is very voluminous, and, as might be expected after so great length of time not without conflict. James Combs in the year 1855, made a deed to Jehu Cody for a large body of land on Elk Creek, extending to the dividing ridge between Elk Creek and Buckeye. Cody moved into the house where Combs had been living and lived upon the land he had purchased until he died during the Civil War, claiming under his deed during all this time all the land within his boundary. After his death his widow and children sold the land to Jeremiah Smith, and he and those claiming under him in like manner held and claimed the land until the bringing of this action. Washington Combs who lived near the mouth of Buckeye, settled one of his sons above him on Buckeye, and his daughter, Mrs. Evans, the mother of Alvin Evans, still higher up. on Buckeye. After the Evans had lived there some time, he moved them to the lower place, and the upper place was sold to Jordon Ashley. Ashley held it for a number of years, and from him it passed to Washington Martin and from Washington Martin, it came to the hands of Alvin Evans. We conclude from all the evidence that during the time that Cody and Smith were holding on one side of the mountain and Mrs. Evans, Ashley and Washington Martin on the other side of the mountain, that the top of the ridge between Buckeye and Elk Fork was recognized as the line between them. It is true there are some conflicts in the testimony; but the fact remains that this line is a plainly marked line and that the marks are very old, and presumably practically as old as the original surveys of the land. This plainly marked line not only follows the dividing ridge between Buckeye and Elk Fork, but it also follows the ridge around on both sides of the Cody land, showing that this dividing ridge was adopted by the parties as the line. The situation of the land, the age of the marks on the line, the conduct of the parties and the long acquiescence of the parties in this as the line, leave no doubt in our minds that this was agreed to between the patentees, and was the recognized line, when James Combs conveyed to Cody in 1855. There seems to have been no dispute about it until some surveys were made many years after the death of all the persons who established and marked the lines. Time obscures all things, and this line having been acquiesced in for more than thirty years, cannot now be disturbed. There was not only a conflict in the patents,

but it is evident from the patents themselves that the lines were not in fact run. In the Napier patent, all the calls are to a stake although most of the lines ran through timber. In the Combs patent a number of calls are to a stake, where there is no reason that timber should not be called for. Reading these patents together, it is pretty evident that the surveyor did not run the lines out on the mountain, but that he set them down guessing at the distance. The agreement upon the top of the ridge as the dividing line was probably induced by the fact that this is what was really intended to be the line between the patents. But however this may be, the facts shown after so great a length of time are sufficient to warrant the conclusion that such an agreement was reached; and there being an uncertainty as to the true location of the patents, the agreement, though in parol, will be upheld after possession has been taken and held under it for so many years. Amburgy v. Burt and Brabb Lumber Co., 121 Ky., 580; Moseley v. Eversole, 148 Ky., 685).

Evans, in the year 1890, obtained a patent for 110 acres on Elk Creek within the bounds of the Cody deed, but, as he claims, not within either of the James Combs patents; he insists that to this extent at least, judgment should have been entered in his favor. It is true the surveyors located the Combs' patents so as not to include this land, but it is evident that James Combs did not so locate them; for he conveyed the land to Cody. One of the corners of this 110 acre patent is very near the house in which James Combs lived; and it was his evident purpose to take in the land about his house. Nobody in the neighborhood seems to have regarded this land as vacant, until some one had some surveying done about the year 1890. Up to that time, it had always been regarded as a part of the Cody or Smith tract. Under all the facts and circumstances we conclude that the location of the patent as made by James Combs and acquiesced in for so many years, is the best evidence of its true location; and that the circuit court properly declined to adjudge to Evans this land under the patent obtained in the year 1890. After the great lapse of time and the death of all the original parties, the facts shown warrant the presumption that the land was not vacant when Evans made his survey in 1890.

Judgment affirmed.