## Garvin, et al. v. Threlkeld, et al.

(Decided January 16, 1917.)

### Appeal from Oldham Circuit Court.

1. Adverse Possession—Instructions.—Where, in an action for the recovery of land, the evidence of adverse possession by the defendants of a part of the land for the statutory period is uncontradicted, it is error to refuse an instruction, telling the jury in substance to find for the defendants as to that part of the land so held.

2. Boundaries—Establishment—Parol Agreement Between Owners—
Acquiescence—Adverse Possession.—Where there is a bona fide
dispute between adjoining owners as to their dividing line, a parol
agreement, establishing the line, and executed by marking or build-
ing a fence on the line, and thereafter acquiesced in by the parties
for a considerable time, is valid, though not acquiesced in or ac-
companied by adverse possession for the fifteen year statutory
period of limitation.

3. Frauds, Statute of.—Real Property—Parol Agreement As To
Boundaries.—A parol agreement between adjoining owners as
to the dividing line, not executed by marking or building a fence
on the line, but merely providing that the line was to be sub-
sequently established and a fence built thereon, is within the
statute of frauds and invalid.

EDWARDS, OGDEN & PEAK, S. E. DeHAVEN and G. W. PEAK
for appellants.

A. T. LADD and CHARLES CARROLL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

William Threlkeld, Sr., and others brought this suit
against Alice Garvin and others to recover a tract of
six and one-third acres of land located in Oldham
county. From a verdict and judgment in favor of the
plaintiffs, defendants appeal.

While defendants deny plaintiffs' title, it is ad-
mitted that plaintiffs have a title of record to the land
in controversy, so that phase of the case may be elimi-
nated.

The only grounds on which the defendants relied to
defeat a recovery by plaintiffs were: (1) adverse pos-
session; and, (2) a parol agreement, by which the
division line between them and plaintiffs was fixed and
a partition fence erected thereon. Plaintiffs deny the
plea of adverse possession, and further contended that
they and the defendants agreed to have the dividing line
surveyed and fixed and to have the partition fence
erected thereon; that the fence actually erected was not
on the agreed line but was a mere temporary fence, and
it was so understood by the parties.

Plaintiffs and defendants own adjoining tracts.
Plaintiffs have title to all of the land west of "Tenant's
old line," while the land east of that line is owned by
defendants. William Threlkeld, Sr., says that up to
about eight years ago there was some question between

the parties as to the true dividing line. He then suggested to Joseph and Henry Garvin, who represented the Garvin estate, that the fence between them be repaired. The Garvins suggested that a new fence be built, and both parties agreed that the old fence as it then stood was not on the true line. It was further agreed between them one Kemp, a surveyor living in Jefferson county, be employed for the purpose of running the line, each to pay one-half of the expense. Kemp came, but his survey was not satisfactory to either party. Both parties agreed that the true dividing line was an old line known as the "Tenant line." After this, Mr. Drane was employed for the purpose of running and locating the true line, the expense of his work to be borne by both parties. Drane came and succeeded in locating the "Tenant line" and made a survey which showed that all the land in controversy was upon the west side of the "Tenant line." Mr. Drane says that he was employed by William Threlkeld to locate the line between the Threlkeld and Garvin farms. The land in controversy was a tract of about six and one-third acres, which both parties claimed. To determine to whom this tract belonged it was necessary to locate the "Tenant line." To do this, he examined a number of records and inquired of a number of the older citizens. He succeeded in locating the "Tenant line," which corresponded with the descriptions of the old deeds and with its location as fixed by the older citizens. While making the survey he discovered an old fence, which at times was on the true line and at other times off the true line. Mr. Kemp testified that he attempted to locate the line, but at first failed to do so. After this failure he promised to return and locate it. He did not return for several years. During that time Mr. Drane had located the line. With Mr. Drane's data he was enabled to locate the line. He found that the one hundred and fifty acre farm of plaintiffs included the six and one-third acres in controversy and that the land of the defendants was on the east side of the line. Colonel Jeff Steele corroborated Mr. Drane as to the proper location of the "Tenant line."

For defendants, Henry Garvin, who was forty-three years of age, testified that he had lived on the land practically all of his life. From his earliest recollection there had been a fence between the two tracts. He had

frequently repaired this fence and he and his co-defendants and those under whom they claimed had been using and cultivating all of the land east of and up to the fence for a period of thirty years or more. During all that time they had been in the continuous, uninterrupted, peaceable and adverse possession of all the land in controversy, with the exception of that included between the new and the old fence. Joe Garvin, A. F. Cropper, F. S. Barbour, Sam Howard and Wilson Clore corroborate Henry Garvin's testimony on the question of adverse possession. F. S. Barbour's testimony covers a period of fifty years, during which time he says that the defendants and those under whom they claimed had cultivated, used and controlled all of the land east of and up to the old fence. The two Garvins and A. F. Cropper also testified to the effect that about eight years before their testimony was given plaintiffs and defendants agreed on a division line and subsequently erected a fence on this line.

William Threlkeld, Sr., testified in rebuttal and denied that the division line was fixed by parol agreement and that the fence was built on this line. On the contrary, he says that the fence was built merely for temporary purposes and that under the agreement the old "Tenant line" was the true dividing line, and whenever that line was established a new fence was to be built thereon. Other witnesses corroborated William Threlkeld, Sr.

Under the court's instructions the jury were authorized to find for plaintiffs if they believed from the evidence that the land in controversy lay within plaintiffs' one hundred and fifty-acre boundary. On the other hand, they were authorized to find for defendants if they believed from the evidence that the defendants had been in the adverse possession of the land in controversy for more than fifteen years, or that plaintiffs and defendants agreed on the dividing line and thereafter built the division fence on that line, pursuant to said agreement.

The purpose of the suit was to recover all of the land in possession of the defendants that lay west of the "Tenant line." The old fence referred to by the different witnesses lies west of this line. Between the "Tenant line" and the old fence are about two or two and one-third acres of land. While the new fence cor-

responds with the old fence for a short distance, it runs considerably west of the old fence for the greater portion of the distance. Between the old fence and the new fence are about four-acres of land. The evidence that defendants have been in the open, notorious, continuous, peaceable and adverse possession of all of the land in controversy lying between the "Tenant line" and the old fence is uncontradicted. The defendants offered an instruction to the effect that in no event could the jury find for plaintiffs more than four and one-third acres of land. Viewed in the light of the facts of the case, this instruction was equivalent to a peremptory instruction to find for the defendants as to the land lying between the "Tenant line" and the old fence. In view of the uncontradicted evidence on the question of adverse possession, defendants were entitled to such an instruction, and the court erred in not giving the offered instruction or one similar in effect.

In view of a reversal of the case, another question is necessarily presented, namely, the validity of the two parol agreements relied on by the parties. It will be observed that the Garvins testify that the division line was agreed on by the parties and the fence subsequently erected on that line. On the other hand, this agreement was denied by the Threlkelds, who claim that the division line was to be established on the old "Tenant line" when fixed, and that a new fence was to be erected on this line. These alleged agreements were made about eight years before the parties testified. While the validity of parol agreements to settle disputed boundaries was long resisted on the ground that, in effect, they passed the title to real property without the solemnities required by the statute, it is now settled that where the dividing line is uncertain and there is a *bona fide* dispute as to its location and the parties agree on the dividing line and execute the agreement by marking the line or building a fence thereon, such an agreement is not prohibited by the statute of frauds, nor is it within the meaning of the provisions of the law that regulate the manner of conveying real estate. The reason for the rule is that the parties do not undertake to acquire and to pass the title to real estate, as must be done by written contract or conveyance. They simply by agreement fix and determine the situation and location of the thing that they already own, the purpose be-

ing simply by something agreed on to identify their several holdings and to make certain that which they regarded as uncertain. 9 C. J., section 175; Evans v. Bates, 155 Ky. 68, 159 S. W. 612; Gordon v. Simmons, 136 Ky. 273, 124 S. W. 306, Ann. Cas. 1912A 305; Warden v. Addington, 131 Ky. 296, 115 S. W. 241; Fields v. Sizemore, 105 S. W. 438, 32 R. 237; Berry v. Evans, 89 S. W. 12, 28 R. 22; Higginson v. Schaneback, 66 S. W. 1040, 23 R. 2230; Campbell v. Campbell, 64 S. W. 458, 23 R. 869; Duff v. Cornett, 62 S. W. 895, 23 R. 297; Gayheart v. Cornett, 42 S. W. 730, 19 R. 1052; Ferguson v. Crick, 23 S. W. 668, 15 R. 461; Grigsby v. Combs, 21 S. W. 37, 14 R. 651; Jamison v. Petit, 6 Bush. 669; Threlkeld v. Winston, 2 R. 63, 10 Ky. Op. 956; Elms v. Hunt, 6 Ky. Op. 361. As stated in the case of Boyd v. Graves, 4 Wheat. (U. S.) 513, 4 L. ed. 628, "adjoining owners who adjust their partition line by parol, do not create or convey any estate whatever between themselves; no such thought or intention influences their conduct. After their boundary line is fixed by consent they hold up to it by virtue of their title deeds and not by virtue of a parol transfer." See also Amburgy v. Burt & Brabb Lumber Company, 121 Ky. 580, 89 S. W. 680. While it is true that in a number of cases, where the executed agreement fixing the dividing line was followed by acquiescence of each of the parties, or their adverse possession for the statutory period of fifteen years, this fact was adverted to in the opinion as an element of considerable weight—Grider v. Davenport, 22 R. 1455; Robards v. Rogers, 20 R. 1017; Hay v. Pierce, 144 Ky. 768, 139 S. W. 941; Moseley v. Eversole, 148 Ky. 685, 147 S. W. 426; Deskins v. Williams, 145 Ky. 355, 140 S. W. 546; Abrams v. Wild, 120 S. W. 357; Hocker v. Keeton, 115 S. W. 784; Turner v. Dixon, 106 S. W. 814, 32 R. 621; Fields v. Sizemore, *supra;* Lost Creek Coal Co. v. Napier, 89 S. W. 264, 28 R. 369; Crutchlow v. Beatty, 23 S. W. 960, 15 R. 464—We have never held that where the agreement was actually executed by the parties it was not valid if not acquiesced in or followed by adverse possession for a period of fifteen years. On the contrary, we distinctly held in the case of Frazier v. Mineral Development Company, 86 S. W. 983, that an oral agreement fixing the boundary lines may be enforced in equity if the parties have recognized the line and treated it as the

true division, without a showing that it had been so recognized for fifteen years. Indeed the great weight of authority is to the effect that the agreement, when followed by possession with reference to the boundary so fixed, will be conclusive on the parties, although the possession may not have been for the full statutory period. Boyd v. Graves, *supra;* Malone v. Mobbs, 102 Ark. 542, 145 S. W. 193, 146 S. W. 143, Ann. Cas. 1914A 479; Gornto v. Wilson, 141 Ga. 597, 81 S. E. 860; Clayton v. Feig, 179 Ill. 534, 54 N. E. 149; Olin v. Henderson, 120 Mich. 149, 79 N. W. 178; Bosburgh v. Teator, 32 N. Y. 561; 9 C. J., section 182.

This view of the question accords with the further view that such agreements are not prohibited by the statute of frauds or the statutes regulating the manner of conveying real estate. Clearly, if such agreements are valid, then acquiescence and adverse possession for the statutory period are not essential to their validity. There are cases, however, where the original parol agreement cannot be shown by direct evidence. In such cases, the only way of proving the original parol agreement is to show that the established line was long acquiesced in by the parties, and the longer the acquiescence the more valuable such evidence becomes. We, therefore, conclude that, in order to establish the parol agreement relied on by the Garvins, it was not necessary to show that the line claimed to have been established by that agreement was followed by the acquiescence or adverse possession of the parties for a period of fifteen years. All that was necessary was to show that the dividing line was actually established and thereafter recognized or acquiesced in by the parties for a considerable while. In view, however, of the conflicting evidence in regard to the agreement itself, and its subsequent execution by the erection of the fence on the alleged dividing line, we conclude that the question was properly one for the jury.

When we come to consider the alleged parol agreement testified to by the Threlkelds a different question is presented. While they denied the parol agreement relied on by the Garvins, they further testified that the parol agreement actually made by the parties was to the effect that the "Tenant line" was to be established by a surveyor and the division fence erected on that line. It will thus be seen that the location alleged to

have been agreed on was not marked or fenced, but was subject to the subsequent establishment of the line. In other words, the agreement was never executed and was, therefore, clearly within the statute of frauds. Warden v. Addington, *supra;* Robinson v. Corn, 2 Bibb, 124. While the testimony of the Threlkelds was admissible for the purposes of disproving the parol agreement relied on by the Garvins, it was not sufficient to establish the validity of the parol agreement on which they themselves relied.

If, upon the return of the case, the evidence on the question of adverse possession be substantially the same, the trial court will direct a verdict in favor of the Garvins for the land lying between the "Tenant line" and the old fence. The court will also instruct the jury, in substance, to find for plaintiffs as to the land lying between the old fence and the new fence, unless they believe from the evidence that the plaintiffs and defendants agreed upon the location of the line between their respective lands and built the dividing fence thereon pursuant to said agreement, and thereafter acquiesced in such location for a considerable period of time, in which event they will find for the defendants.

Judgment reversed and cause remanded for a new trial consistent with this opinion.