## Altoona Trust Company v. Ison, et al.

## Swift Coal & Timber Company v. Same.

(Decided June 9, 1916.)

## Appeals from Letcher Circuit Court.

1. Specific Performance—Fraud—Condonation.—In an action for the specific performance of a contract for the sale of land, evidence examined and held insufficient to show that the contract was obtained by fraud, but that even if it was so obtained the vendor condoned the fraud when, with knowledge of all the circumstances, he accepted a substantial payment on the purchase price and offered to bring suit to clear his title and make a deed to the land.

2. Specific Performance—Contract of Sale—Acceptance—Evidence.—In an action for the specific performance of a contract for the sale of land, which was to become binding upon its acceptance in writing by the purchaser within twelve months from its date, evidence examined and held sufficient to show its written acceptance within that time.

3. Specific Performance—Purchase Price—Credits—Evidence.—In an action for the specific performance of a contract for the sale of land, evidence examined and held insufficient to show a credit on the purchase price allowed by the judgment.

4. Adverse Possession—Acts Constituting Adverse Possession.—One entering upon land to which he has title cannot, without an entry of any kind upon adjoining land to which another has a superior title, extend his possession thereto, by merely marking a boundary around it, and claiming to the extent of his marked boundary for the statutory period.

5. Specific Performance—Sale of Land—Judgment—Error.—A judgment decreeing specific performance of a contract for the sale of land, to which the vendor has no title, is erroneous.

DISHMAN, TINSLEY & DISHMAN and D. I. DAY for appellants.

D. D. FIELDS, WOOTTON & MORGAN and S. E. BAKER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing both on original and cross-appeals.

These two appeals, growing out of the same facts and prosecuted on the same record, will be considered in one opinion.

On March 18th, 1910, Clint Ison and his wife, Nancy, entered into a written contract with one, Leland H. Moss, by which they, in consideration of $25.00 in hand paid, proposed to sell to him a tract of land in Letcher county containing about five hundred acres at the price of $8.00 per acre, to be paid upon the execution and delivery of a deed conveying good title with covenant of general warranty. The contract was to be binding upon its acceptance by Moss in writing at any time within twelve months from date. Subsequently Moss assigned the contract to the Swift Coal & Timber Company. On March 10th, 1911, the Swift Coal and Timber Company brought this suit against Clint Ison and wife for specific performance. By answer and cross-petition the Altoona Trust Company, which was made a party defendant, asserted title to certain portions of the land in controversy. By amended petition it subsequently counted its claim or ownership to a tract containing 83.62 acres. On final hearing Ison was adjudged to be the owner of the 83.62 acre tract and specific performance of his contract with the Swift Coal and Timber Company was decreed. From this judgment both the Altoona Trust Company and the Swift Coal and

Timber Company appeal, and the Isons prosecute a cross-appeal.

The Isons defended on the ground that the contract with Moss was obtained by fraud, and that written acceptance of the contract was not given him within the twelve months from its date. Without entering into a discussion of the facts on which the claim of fraud is based, it is sufficient to say that the evidence not only falls far short of being of that clear and convincing character that would justify the conclusion that the contract was obtained by fraud, but plainly shows that the Isons, several months after the execution of the contract and with full knowledge of all the facts, accepted a portion of the purchase price and offered to bring suit to clear their title, and to make a deed to the land, and thereby ratified the contract and condoned the fraud, even if the contract was obtained by such means.

On the question of the acceptance of the contract, C. A. McCoy, chief counsel and vice-president of the Swift Coal and Timber Company, testified that on September 12th, 1910, he delivered to Ison a check for $500.00 as part payment on the land, and at the same time gave him a typewritten notice, signed by McCoy as attorney for the company, notifying Ison that as assignee of the Moss contract the company accepted said contract and was ready to pay the balance of the purchase price upon the execution of a proper deed. The check is produced in evidence and Clint Ison admits receiving the money, but denies having been served with the notice. We conclude that this evidence is sufficient to show that the contract was accepted in writing. It is by no means probable that the company would have made such a substantial payment on the purchase price without accepting the contract and taking the necessary steps to show its acceptance. It follows that specific performance was properly decreed.

Another complaint by the Isons is that the judgment gives the Swift Coal and Timber Company credit on the purchase price for a payment of $525.00, and for a subsequent payment, made in September, 1910, of $500.00. We have carefully gone over the record and are unable to find any evidence of the fact that two $500.00 payments were made to Ison. The only payments that were made was the payment of $25.00 when the contract was executed, and the further payment of $500.00 on Sep-

tember 12th, 1910. That being true, the judgment in allowing credit of $525.00 and another credit of $500.00 is erroneous.

As between the Altoona Trust Company and the Isons the following facts appear: The trust company claims title to the 83.62 acres, under and by virtue of a survey for 18,000 acres made October 3rd, 1873, and patented March 2nd, 1874, to William M. Lloyd. This patent excludes a number of prior surveys and patents and the land in controversy lies within the patent, but outside of the exclusions. Clint Ison claims title under and by virtue of a deed executed to him by Moses Ison in the year 1908. Gideon Ison, the father of Moses Ison, was the owner of two patents, one for 1,000 acres, issued April 1st, 1844, and one for 50 acres, issued April 4th, 1844. Moses was settled on the land by his father in 1864, and after his father's death his brothers and sisters subsequently conveyed the land to him. Moses also obtained the following patents: One for 200 acres, dated March 25th, 1870, and numbered 46,035; one for 200 acres, dated March 25th, 1870, and numbered 46,036; one for 200 acres, dated March 25th, 1870, numbered 46,037; one for 100 acres, dated April 21st, 1873; and one for 125 acres, dated August 19th, 1890. It will be observed that all of these patents, except the last mentioned, are superior to the Lloyd patent. None of them, with the exception of the last one mentioned, cover any portion of the tract in controversy. Since the last mentioned patent is inferior to the Lloyd patent and the land in controversy is not covered by any other patent owned by Ison, it follows that his title to that tract of land must be sustained, if sustained at all, on the ground of adverse possession. On the question of adverse possession Moses Ison testifies that there was a marked boundary all around the land that he sold to Clint Ison. He remembered marking the boundary himself and thought that he did it upwards of twenty years before he testified, while he was engaged in processioning the land. He further says that he marked the boundary himself with a knife, and most of it with a knife and axe; that he took an axe and marked the trees on the left-hand side as you go down. He further says: "I marked them with a knife; a man could have seen them then, I know, right on the bark. I marked them as a line, I remember. I might not have marked them with

an axe on this line I made Clint—it may have been the Boreing land—I marked it with a knife.'' Moses Ison also says that he made several clearings on his land, but he states that these clearings were embraced by his patents, and it clearly appears that no clearing of any kind was made on the tract claimed by the trust company. The evidence for the trust company, as given by the surveyor who made the map filed as an exhibit in the record, is to the effect that the tract in controversy lies on the east side and not on the west, and the only trees that are marked on the east side of the tract in controversy are the corner trees of other surveys. The surveyor further testifies that there are no clearings or enclosures of any kind on the tract in controversy. It must be conceded that the evidence to the effect that the eastern boundary of the tract deeded to Clint Ison, which includes the land in controversy, was well marked, is not altogether satisfactory, but, passing this phase of the case and assuming that it was well marked, the question presented is whether or not a party who has entered upon and cleared land, to which he has a good title, may, without an entry of any kind upon adjoining land to which another has a superior title, extend his possession so as to include such land by merely marking a boundary around it and then claiming to the extent of his marked boundary for the statuotry period. There are cases holding that where a party enters upon land and marks a boundary around it, and holds and claims possession of the land so marked for the statutory period, he will acquire title by adverse possession, but, as shown in the case of Burt and Brabb Lumber Company v. Sackett, et al., 147 Ky. 232, 144 S. W. 34, this rule is confined to cases where the entrant has no title to the land upon which he enters and his entry is, therefore, wrongful. Where, however, the entrant settles on a tract to which he has title and which is outside of the claim of the superior title holder, he cannot obtain adverse possession of land within the claim of the superior title holder by simply taking a deed to it and continuing to live outside of the lap. Bowling v. Breathitt Coal, Iron and Lumber Company, 134 Ky. 249, 120 S.W. 317. In the case of Burt & Brabb Lumber Company v. Sackett, et al., *supra,* it was held that where a party conveyed to another land, to only part of which he had title, the entry of the grantee upon

the land to which his grantor had title, did not extend his possession to that part of the land to which his grantor had no title. To the same effect is the case of Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2. The only difference between those cases and this is that the extent of Ison's alleged possession is shown by a marked boundary instead of a deed. Since the extent of possession may be shown either by a deed or marked boundary, there is no reason why the same doctrine should not apply to the facts of this case. Indeed, we held in the case of Frazier v. Ison, 161 Ky. 379, 170 S. W. 977, that a person who owns and is in possession of a tract of land cannot, by merely marking off a boundary of adjoining land and occasionally taking rails and logs therefrom, acquire title by adverse possession to such adjoining land. And in the case of Denny v. Abbott, 163 Ky. 499, 173 S. W. 1159, we held that a party's entry upon land to which he had title did not extend his possession to a tract to which he had no title, and upon which he never made an entry, improvement or enclosure. The reason for this doctrine is well stated in the case of Bowling v. Breathitt Coal, Iron and Lumber Company, *supra,* in the following language:

"If, in a case like this, a man could, while living on land which he admittedly owned, gain title within an elder patent which adjoined him, by simply marking off a boundary and taking a deed from some one to it, when there was nothing on the land to put the owner on notice of his adverse claim to it, there would be no security for land titles, and the entire doctrine that the settlement of the junior patentee, when without the lap, will give him no possession within the senior patent, would have to be abandoned. The plaintiff, having the title to the land, was in the constructive possession of it. The defendant could not defeat this constructive possession by merely living on an adjoining tract of land not included in the plaintiff's patent, and claiming land within that patent."

But it is argued that as Moses Ison made a clearing at the head of Patrick Branch prior to the issuance of the Lloyd patent, and as this clearing was outside of the older patents and on the Lloyd patent, and as Moses Ison then had a marked boundary, including the land in controversy, the statute of limitation began to run

against the Commonwealth prior to the issuance of the Lloyd patent and continued to run, notwithstanding the issuance of that patent. Without passing on the soundness of the legal principle thus presented, it is sufficient to say that the clearing referred to is located within certain superior patents belonging to the Isons, and is not located on the land in controversy, or on any part of the Lloyd survey not covered by prior patents. Since the record title to the tract in controversy is in the trust company and the Isons never acquired title thereto by adverse possession, it follows that the judgment should have been rendered in favor of the trust company instead of the Isons.

The appeal by the Swift Coal and Timber Company was prosecuted for the purpose of protecting its rights in case it should be adjudged that the Isons were not the owners of the 83.62 acre tract claimed by the trust company. Since that tract was improperly included in the judgment decreeing specific performance, it necessarily follows that the judgment in that respect is erroneous.

Judgment reversed both on the original and cross-appeals, and cause remanded with directions to enter judgment in conformity with this opinion.