## Bordes v. Leece.

(Decided February 4, 1919.)

### Appeal from Rockcastle Circuit Court.

1. Trespass—Action for Upon Land—Evidence.—A party, who sues for trespasses upon his land, and his ownership is denied, must show, that he is the owner of the land, by some one of the ways, provided by law, for acquiring ownership of lands, before he can recover.

2. Contracts—Parol Argeement Establishing Division Line—Estoppel. —A parol agreement between the owners of adjoining lands, establishing a division line between their lands, will not be enforced as an estoppel, where the controversy arises from overlapping deeds, causing a dispute as to the superiority of title, and therefore a dispute as to true division line, and where the agreement was not executed, by acquiescence in and recognition of the agreed line for a considerable period of time, but, was repudi-

ated by one of the parties, within a few days, and before any intervening right occurred.

C. C. WILLIAMS for appellant.

BETHURUM & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This controversy arises from the rival claims of the appellant, Julian Bordes, and the appellee, Alfred Leece, to the ownership of about one and one-half acres of land. The appellant owns a tract of land, containing 110 acres, and the appellee owns a tract, containing 35 acres. These tracts adjoin, and the disputed one and one-half acres lies upon one side or the other of the line, which divides their respective holdings. The deed, under which Bordes claims ownership of his land, describes the dividing line between his land and that of Leece, as a line "beginning at a stone, and running thence, N. 87° West, 104½ poles to a stone, in Jane Roberts' line." The stone in Jane Roberts' line, however, was placed there, but a few months, before the institution of this suit. The deed, under which Leece claims his lands, describes the dividing line between him and Bordes' lands, as beginning at a stone, near the angle of two fences, and thence running N. 88 W. 104½ poles to a stake, in Jane Roberts' line. The disputed land lies between a line beginning at the stone and running thence N. 88, W. 104½ poles to Roberts' line, and a line run from the stone N. 87½ W. 104½ poles to Jane Roberts' line. It is thus a triangular piece of ground, commencing at a point at the east end, 104½ poles, in length, and about seventy-five yards, in width, at the western end. Bordes alleging, that he was the owner and in the possession of the disputed land, claiming, that it was a portion of his tract, sought damages against Leece for trespassing upon it. Leece denied the ownership or possession by Bordes of the disputed lands; confesses to cutting timber trees, thereon; and claimed ownership and possession of it, and prayed, that, his title to it be quieted. Bordes replied, traversing all the claims of Leece, and plead, that before the institution of the suit, that he and Leece had made a parol agreement, establishing the dividing line between their respective lands, and that in ac-

cordance with said agreement that the land, in controversy, was embraced by the lands owned by him, and interposed the agreement as an estoppel of Leece to deny, that the lands were owned by him, or that Leece had any claim to them. Leece denied, that such agreement had been made. The lands owned by Bordes as well as those owned by Leece, were once, at the same time, owned by M. G. Wilmott. Hence, to enable Bordes to recover, it was necessary for him to show either a title deducible from Wilmott to him through conveyances and prior to the title of Leece from Wilmott, or else a title by adverse possession. If Bordes could show the necessary record title, it could be defeated by a title arising from adverse possession by Leece.

The parol proof shows, without contradiction, that Wilmott, in the year, 1852, sold the tract of land, now claimed by Leece, to one Johnty Leece, who resided upon it until the year, 1880; that very soon after the sale to Johnty Leece, Wilmott erected a line or division fence, between the lands retained by him, and those sold to Johnty Leece. This fence extended from the stone corner, to Jane Roberts' line, about along the course of the line between those points, on a course of N. 88 W., from the stone to the Roberts line. From the stone toward the west, for a distance of two hundred yards, the land, contiguous to the fence upon Leece's side of the fence, was cleared and cultivated. Johnty Leece's lands, lay on the north side of this fence, and he exercised dominion over the lands upon that side of the fence, and up to it, as long as he held the property, while Wilmott used and controlled the lands upon the south side and up to the fence. If the line between the lands was ever marked in any way, other than by the fence, there is no evidence of it. The fence was there as late as the year, 1880, and Wilmott, nor either of his successors until the appellant, Bordes, was ever known to have claimed, or attempted any act of ownership of the property, on the north side of the fence. The fence rotted down after, 1880, and for a number of years, there was practically, no fence existing, but, in 1902, Leece, the appellee, rebuilt the fence, but, slightly further toward the north, than the original fence. There is parol proof, that the line, in controversy, was run by surveyors, on two or three occasions, and that in surveying it, they ran practically, where the line from the

stone, N. 88 W. 104½ poles to Roberts' line is now claimed, at least, in running the line, the surveyor ran it upon the south side of the fence. The only written evidence of any of these surveys, is a survey, purporting to have been made of the Leece tract, in 1854. This survey describes the line, in controversy, as "beginning at a stake on a branch . . . , thence S. 82, W. 100 poles to a sower wood and a sweet gum . . ." There is evidence, that the end of this line on the Roberts line, was once, a sweet gum. This survey would indicate, that it did not embrace the lands, in controversy, but, the first call in it, is a mistake, as it describes the line from the stone, as running south instead of north.

The written evidence of title offered by Bordes, was:

(1) A deed from his brothers, who were co-heirs with him of his father, John B. Bordes. This deed was executed on the 21st day of April, 1911, and described the line, in controversy, as "beginning at a stone, corner to a 35 acre tract sold to Johnty Leece, and formerly a corner to the lands of William Wilmott, thence with a line of said 35 acres, N. 87 W. 104½ poles to a stone in Jane Roberts' line." The deed recited, that John B. Bordes purchased the land from S. Noland.

(2) A deed from S. Noland, to John B. Bordes, executed on the 18th day of January, 1878, which recited, that the land conveyed, was a tract upon which M. G. Wilmott "lives" and which was sold under a judgment of the Rockcastle circuit court, on the 22nd day of June, 1863, and purchased by Noland and conveyed to him by the sheriff of the county, on the 20th day of August, 1870. The deed further recited, that Noland had attempted to convey the lands to Bordes, by a deed executed on January 26, 1871. This deed did not describe the lands, purported to be conveyed by metes nor bounds. courses nor distances.

(3) A deed from McClure, sheriff of Rockcastle county, to S. Noland, executed on August 26, 1870. This deed recited, that the land was sold under executions, issued upon judgments of the Rockcastle circuit court, against M. G. Wilmott, on June 22, 1863, and the equity of redemption therein, was sold on the 28th day of September, 1863, and S. Noland was the purchaser. The deed contained no description of the lands further, than, being the place where M. G. Wilmott "lives."

(4) · A deed from M. G. Wilmott to B. R. Wilmott, executed March 5, 1875. This deed describes the line, in controversy, as "beginning at a stone . . . corner to 35 acres of land sold to Johnty Leece and formerly a corner to W. M. Wilmott, thence with a line of said 35 acres N. 87 W. 102 6/10 poles to a stake in Jane Roberts' line."

(5) A judgment of the Rockcastle circuit court in favor of John B. Bordes against N. D. Wilmott, and the same plaintiff against R. B. Wilmott, and in which Bordes recovered a tract of land, of which the one now owned by the appellant, Bordes, is a part. The line, in controversy, was described in the judgment as "beginning at a stone, a corner of a 30 acre tract of land, now owned by J. K. McClary, thence with a line not yet established, N. 86 W. 104 poles to a stake in Jane Roberts' line." This judgment, as copied in the record, does not bear any date, but, presumably, was rendered in 1887, as it directed the sheriff to execute a writ of possession, for the lands on or before January 1, 1888.

The parol proof shows that the appellant, and those under whom he claims title, including his father and the Wilmotts, have been in the actual possession of the tract of land now owned by appellant, since, 1850, and it is to be presumed, claimed and had actual possession to the extent of the boundaries described, in their title papers, where not in the actual possession of some other. Neither the deed from Wilmot, by the sheriff, to Noland, nor the deed from Noland to John B. Bordes, from whom the appellant inherited his land, contains any evidence, that the lands conveyed, embraced· the lands, in controversy. The deed from M. G. Wilmott to B. R. Wilmott, is not in appellant's chain of title, since the grantor, in that deed had lost his title to the lands, long before it was executed, and could only be evidence of the extent of the grantees' unlawful possession, up to the time, he was ousted by appellant's father, by the judgment of the court. Besides, when that deed was made and during the occupancy of the land by the grantee, the predecessors of the appellee, in title and occupancy, were in the actual possession of his land up to the line from the stone, N. 88 W. 104½ poles to Roberts' line. As before stated, Johnty Leece was in the actual possession of the land, in dispute, claiming, it as his own, up to the year,

1880, at which time, the fence was still standing upon the line, from the stone N. 88 W. 104½ poles to Roberts' line, and in the year, 1880, a judgment of the circuit court, was rendered, in an action in which Johnty Leece, was a party, directing a sale of the lands now owned by appellee, and in the judgment, the line, in controversy, was described, as "beginning at a stone . . . , at the angle of two fences, thence N. 88 W. 104½ poles to a stake, with pointers, in Jane Roberts' line." The land was purchased at the sale under the judgment, by J. K. McClary, and conveyed to him, by a deed, which described the line, as in the judgment. McClary conveyed the land to Stapp and Stapp to Whipple, and Whipple to Reid, and Reid to appellee, and in each of the deeds, the line, in dispute, was described, as beginning at the stone, and thence, N. 88 W. 104½ poles to Jane Roberts' line. Whether the 35 acre tract, when originally sold to Johnty Leece, included the disputed land, or not, it seems, that the vendor and vendee made the line, as now claimed by appellee, by the erection and maintenance of the division fence between them. The proof fails to show any constructive or actual possession of the land, in dispute, by the appellant, or any of his predecessors, in title, while it does show an actual possession by Johnty Leece, for nearly thirty years, and thereafter, his successors, in title, including appellee have held under deeds, which embraced the disputed territory. The title papers of appellant's predecessors, in title, fail to show, that they embraced the disputed land, but, with parol evidence, they do show, that the disputed land was embraced by the deeds from the sheriff to Noland, and by Noland to John B. Bordes, only, in the event, that it was not included in the sale to Johnty Leece, by Wilmott, while all the evidence tends, strongly, to prove, that it was embraced in the tract, which was sold to Johnty Leece. If the disputed land was not embraced by the title papers of Johnty Leece, his title to it matured, by adverse possession, many years before he ceased to own the tract, and the description of his land, in the judgment under which it was sold, in 1880, embraced the land, in controversy, and the deed of each of his successors, in title embraced the land. While the fence rotted and did not exist for a period of time, the title to the disputed land had already matured, by adverse possession,

in Johnty Leece, long before the fence rotted. The appellant, however, plead and now insists, that by reason of a certain parol agreement, entered into, as he alleges, between him and appellee, a few months before the institution of this action, the location of the line between their lands, was agreed upon and established, as beginning at the stone corner, thence a course, N. 87½ W. to Jane Roberts' line, and that the land, in controversy, was upon the side of this line, upon which were the lands of appellant, and for this reason, the appellee was estopped to deny, that appellant was not the owner of the land or to claim ownership in himself. The appellee denies the making of such an agreement. That a parol agreement, establishing a division line between the owners of adjoining lands, under certain circumstances, which may surround parties and attended with certain conditions, will be valid and upheld, and will constitute an estoppel, when a party undertakes to claim the ownership of lands beyond the agreed line from him, or to deny the adjoining landowner's title to such lands, there can be no doubt. The result of such an agreement must not be the mere transfer of the lands owned by one party, to the other, as this is in contravention of the statute against frauds. The principle upon which such an agreement is upheld and enforced is, that the mere establishment of the true dividing line is not a sale or transfer of land by one party to another, and hence, not an agreement within the statute of frauds, requiring it to be in writing and signed by the parties to be bound, but, is an ascertainment and demarcation of the lands already owned by the parties, and is enforced, in the interest of putting an end to controversies. While the appellee denies, that he agreed to the establishment of the line, from the stone N. 87½ W. 104½ poles to Jane Roberts' line, as the dividing line between his lands and those of appellant, the evidence proves the facts, to be as follows: the parties were in a dispute as to the ownership of about three acres of land, which was embraced by the title deed of each—that is the land between a line, from the stone, N. 87 W. and a line from the stone N. 88 W. to Roberts' line. To determine the true dividing line between their lands, would make necessary the determination of which one of them owned the superior title. One or both of them secured the services of a surveyor,

who having, first, located the place of the stone corner, inquired of the parties, by the course, in which of their deeds, he should run the line from the stone to Roberts' line, and they agreed to submit that question to the decision of the surveyor, who announced that as one deed described the course to be N. 87 W. and the other described it, as N. 88 W. he would run it by neither of those courses, but, would run the line upon a course midway between them, which was N. 87½ W. and did so. As the surveyor proceeded, appellant or some of his friends, drove several stakes along the line, and placed marks upon certain bushes. When Jane Roberts' line was reached, the surveyor inquired, if the line was satisfactory to the parties, as run, and each of them signified his satisfaction, and the parties separated. Within two or three days, the appellee notified the appellant of his dissatisfaction with the line, as run and before, that it should be considered as permanent, that he desired to go to Mount Vernon, and to make an investigation of the records, there. Appellant assented to this request, but, urged appellee to make the investigation, as he desired to proceed, at once, to cutting the timber trees on the land. Appellee said, that he would do so, at the end of the following week. Before the expiration of that time, they were thrown together, again, and appellant again insisted, that he desired to cut the trees, at once, when appellee agreed for appellant to proceed to cut the timber trees, saying, according to appellant and others present, that he had made all the investigation, he desired to make, but, according to his own statement, that he was sick and unable to leave home, but, would make a further investigation, when he became physically able to do so. In the course of a few weeks, but after appellant had cut four or five trees, the appellee notified him, that he desired to have the line run by a certain other paper, and that, if that was not agreed to, that he would claim all the land, upon his side, up to the fence. Appellant refused to do any further surveying, and thereafter, appellee cut some of the trees upon the disputed land.

Whatever may be the rule which applies to the enforcement of a parol agreement, establishing a dividing line between adjoining land owners, when the exact location of the line is in doubt, and the subject of dispute between the owners, and where the evidences of the true

line are uncertain, and there is no question of superiority of title growing out of overlapping title papers, the same rule does not apply, as when, in establishing a dividing line, by parol, each of the parties gives up portions of his lands to the other, or where there are overlapping title papers, as patents and deeds, and the controversy is as to the superior title, and the true line depends upon the superior title. In the first instance, a parol agreement as to the dividing line is upheld, when the line has been agreed upon and plainly marked, as it is held, that such an agreement does not result in an exchange of any lands, and hence, is not within the statute of frauds. In the second instance, the line must be agreed upon, and the parties take actual possession up to the line, and continue the possession for a considerable time. In the last mentioned instance, the line must be agreed upon, and plainly marked, and acquiesced in and recognized by the parties as the true dividing line for a long or considerable period of time. It was formerly held, that the period of time, that a party should hold actual possession, or should acquiesce in and recognize the agreed line, as the dividing line, to make the agreement enforcible, or to constitute it a valid estoppel, was the same period, which is necessary to create a title, by adverse possession, but now, while the courts have never definitely fixed the period of time, of actual possession, or acquiescence and recognition, but, it is held in all cases, that the period of time, must be a long one, as distinguished from a short or temporary one. Robinson v. Com., 2 Bibb 124; Smith v. Stewart, 13 Ky. Op. 705; Campbell v. Combs, 77 S. W. 923; 25 R. 1643; Geohegan v. Turner, 26 R. 537; Frazer v. Mineral, etc. Co., 27 R. 815, 86 S. W. 983; Ball v. Loughridge, 30 R. 1123 · Cheatham v. Hicks, 28 R. 66; Caudill v. Bayes, 28 R. 182; Amburgy v. Burt & Brabb L. Co., 121 Ky. 580; Blanton v. Howard, 148 Ky. 551; Conly v. Mayo, 157 Ky. 450; Alexander v. Parks, 24 R. 2113; Warden v. Addington, 131 Ky. 296; Orr v. Foote, 10 B. M. 387; Mosely v. Eversole, 148 Ky. 657; Young v. Woolett, 16 R. 767; Jamison v. Petit, 6 Bush 670; Thacker v. Crawford, 5 R. 770; Grigsby v. Combs, 14 R. 652; Duff v. Cornett, 23 R. 297; Loretta, etc. v. Clarissa Abel, etc., 13 Ky Op. 462; 9 Corpus Juris 234.

The instant case was one involving overlapping deeds. There was no question, as to where the line was, which

was described in either deed, but, the question was one of superiority of title and therefore, the true division line, and the parol agreement relied upon, if carried into effect, resulted in each of the parties giving up a portion of the lands, which were covered by his deed, and a transfer to one or the other of land, to which the other had a valid title. Under such circumstances, although it should be conceded, that all the other elements were present, which would make the parol agreement relied upon enforcible as an estoppel, the element of acquiescence in and recognition of the agreed line, for any considerable period of time, or doubtless for any period of time, was lacking, as appellee, if he agreed to the establishment of the line contended for, did not recognize or thereafter acquiesce in the line, but, repudiated it within a few days, and so notified appellant.

The judgment is therefore affirmed.