## Smith, et al. v. Berry, et al.

(Decided March 25, 1924.)

### Appeal from Whitley Circuit Court.

1. Adverse Possession—Instrument Held Not to Constitute Color of Title.—An instrument evidencing a transfer of property and describing it as "a certain piece of land supposed to be 25 acres more or less on Watts creek," held not a sufficient description of the land where Watts creek was several miles in length, and therefore not a title bond so as to constitute color of title.

2. Adverse Possession—Mere Marking of Boundary Held Not to Give Constructive Possession.—One who went upon land already constructively in possession of others, and merely marked a boundary, did not thereby get constructive possession, in the absence of color of title.

TYE & SILER for appellants.

R. L. POPE and HENRY W. BOND for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

This is an appeal from a judgment rendered in a suit of trespass to try title to realty. Appellees are the wife and daughter (heirs at law) of James Berry, colored, who died about fifteen years ago.

In September, 1870, James Berry purchased 25 acres of land from D. D. Early, who held a patent issued in 1849. The purchase was evidenced by a writing executed by the parties dated September 1, 1870, and which contained the essential elements of a title bond except as to the description, which reads: "A certain peace of land supposed to be 25 acres more or less on Wats creek for the of $50.00, for which the said Berry gives his note

to the said Early for sum of $50.00 to bare interest from date."

Watts creek is several miles in length and the land cannot be identified by the description, consequently the writing was not a title bond and constituted no color of title. Brice v. Hays, 144 Ky. 535; Bates v. Harris, 144 Ky. 399; Hall v. Cotton, 167 Ky. 494.

However, James Berry entered under it within the Early patent, built a residence thereon, and lived in it during his life and since his death it has been occupied by his wife and daughter. There is proof that at the time of his entry he marked a boundary of 42 acres which he and the appellees have since claimed and occupied. Of this forty-two acres, thirty acres lie within the lines of the Early patent above mentioned, but on the western side of the boundary extends across and into a 50-acre tract patented to Lafayette Berry in 1825. The lap includes 12 acres; of this two acres are embraced in James Berry's field, and are confessedly held by adverse possession. The remaining ten acres of the lap are unenclosed woodland and constitute the disputed land. It is in proof that James Berry cleared six acres near his residence in the year 1871 and six acres more in the year 1874, all of this being within the Early patent. Later, but more than fifteen years prior to the institution of this suit, he cleared and enclosed twenty acres additional, including the two acres in the Berry boundary above mentioned. Also there is proof that he occasionally cut and sold timber from the disputed land. A few years ago L. K. Smith purchased of Mrs. Florence Berry the timber on the disputed lands and appellees sued both of them to recover damages for cutting same; from a judgment in plaintiff's favor for one hundred and fifty dollars this appeal is prosecuted.

Appellants show a connected paper title deducible from the Commonwealth to the Lafayette Berry tract and also ownership of a 300-acre tract adjoining both the Lafayette Berry and D. D. Early patents on the south, known as the Joseph Duncan tract, patented in 1804.

The Lafayette Berry tract was conveyed by the patentee to Preston Berry on July 21, 1834. It does not appear when Preston Berry acquired the Duncan tract, although there is evidence indicating that he lived thereon prior to the year 1870. On February 1st, 1872, Preston Berry conveyed both the Duncan and Lafayette Berry tracts to his son, Sharpe Berry, and the title thereto was regularly transferred by various mesne convey-

ances un'til it has reached the present owner, Florence Berry.

The proof is clear that Sharpe Berry and those claiming under him have resided on the Duncan tract and have been in continuous possession of the premises since the execution of his deed in 1872.

The Lafayette Berry tract is contiguous to and adjoins the Duncan tract for more than a quarter of a mile, and if Preston Berry was living on the latter in 1870, this gave him constructive actual possession of the Berry tract. Even if he did not so reside he had a valid paper title to the latter which gave him constructive possession of all the boundaries not in the actual possession of others. At any rate it is conceded that Sharpe Berry resided on the Duncan tract at the time of the conveyance to him in February, 1872, so that at the latest he and those claiming the two tracts under him since that time have been in the continuous, constructive, actual possession of the latter.

According to appellees' proof James Berry moved on the land in the fall of 1870, but aside from marking a boundary he made no actual entry upon the interference and thereby acquired no actual possession of it, and as two constructive possessions cannot exist at the same time, the mere marking of such boundary without color of title did not give him constructive possession thereof. Later, that is, subsequent to the purchase of the Lafayette Berry land by Sharpe Berry in 1872, James Berry entered upon the interference and cleared and enclosed two acres of land. This constituted actual possession, and if at the time of this entry the owner of the Lafayette Berry tract had had only constructive possession thereof it might plausibly be argued that this entry should be considered as extending his possession to the boundaries of the interference; but it is unnecessary to decide this question as at that time Sharpe Berry had acquired not only a legal title to the Lafayette Berry tract but by reason of his ownership and residence on the adjoining tract was in the constructive, actual possession of the entire Lafayette Berry boundary, and by reason of this both the actual and constructive possession of James Berry was restricted to his enclosure. Miniard v. Napier, 167 Ky. 208; Boyce v. Blake, 2 Dana 127; Young v. Withers, 8 Dana 167; Griffin v. Dicken, 2 B. M. 20; Fish v. Branamon, 2 B. M. 379; 2 C. J. 343.

Upon the undisputed facts the court should have given the peremptory instruction asked by appellants.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.