## Hill v. Kerr et al.

Feb. 21, 1939.

P. L. SENTERS, Judge

106

J. B. CAMPBELL for appellant.

E. L. STEPHENS for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Robert Hill, here the appellant, filed this suit in the Whitley circuit court against Fred Kerr and wife, Harriet Kerr, and Will Petry and wife, Sally Ann Petry, wherein he alleged and charged that each of them was claiming about one-half acre of his land.

It appears that there is no connection between the appellant's claim of title against the land of the Kerrs and that against the land of the Petrys, or, that is, his claims represent entirely separate controversies unrelated to each other.

If the defendants have been misjoined in the one action, no objection having been raised before making defense, the failure to make motion at proper time operates as a waiver. Bryant v. Stephens, 82 S. W. 423, 26 Ky. Law Rep. 718.

Appellant, by his petition, alleged that he is the owner of a certain parcel of land, as therein described and set out, located in Whitley county, Kentucky, and that two of his neighbors, the defendants, Kerr and Petry, who respectively own separate farms adjoining his, were each claiming about one-half acre of land adjoining and properly embraced within the exterior boundary of his land.

As stated above, there is no sort of connection, in title or claim, between Kerr and Petry as to the separate farms respectively owned by them and each of which, in part, borders on the Hill farm.

The defendants each filed a separate answer. The defendants, Kerr and wife, by their answer denied, on information or belief, that Hill owned any part of the land described in his petition, or, more particularly, that he owned any land within the defendants' boundary, even if the Hill deed, by its calls as to actual courses and distances, included the one-fourth of an acre of the Kerr land sued for.

The defendants, Petry and wife, by their answer likewise traversed the petition and further pleaded that plaintiff and defendants had agreed upon establishing and rebuilding a conditional line fence between their farms and that plaintiff had nimself pointed out and designated the course and location of the agreed line and fence and had driven the stakes by which it was to be located and built, it being further agreed that plaintiff should build his half or portion of said line fence and that the remaining part should be built by these defendants; that in compliance with said agreement, defendants had built the line fence upon that portion of the partition line as agreed upon and that they had not claimed nor encroached upon any lands not owned by them and not upon their side of the partition line fence, etc.; and that by reason of the agreement and conduct of plaintiff, in causing the partition line fence to be constructed where it is now located, he is now estopped from holding out or claiming that the true line separating the lands of plaintiff and defendants is located at any other place than that upon which it was agreed said fence should be and was constructed.

We will now turn our attention to a consideration of the Kerr branch of these two controversies alleged and presented in the petition.

The testimony introduced by plaintiff in his own behalf, by his brother, Aaron Hill, and also by his surveyor, Moore, is to the effect that an old fence had stood for years on the division line between the two farms at this point where Hill is claiming Kerr has crossed over the line and fenced in and taken over one-fourth of an acre of his land.

Appellant's contention in support of this claim is that if the actual courses and distances called for in his deed be surveyed out, a triangle, containing one-fourth of an acre of his land and included in the exterior calls of his deed, will be shown to have been fenced in and

included in the adjoining Kerr field by the new fence as now located.

In support of such contention, he alleges ownership in himself and to sustain such allegation he first introduced a number of deeds executed by his brothers and sisters and also three deeds made to his father, A. B. Hill, under which he has acquired and holds title to the farm. Further, plaintiff introduced as his witness Mr. Moore, whom he had employed to survey the boundary lines of his farm and who testifies that, by running the lines only by the calls of Hill's deeds, it is shown that about one-fourth of an acre of Hill's land has been taken and is included within the fence which Kerr contends marks the division line between their farms.

On this point, Aaron Hill, a brother of plaintiff and testifying for him, states that he has been acquainted with plaintiff's farm for a long time, some fifty years, and knows the land adjoining that Fred Kerr claims he owns; that he was acquainted with the old fence, alike referred to in the deeds under which plaintiff and defendants respectively claim title to these adjoining lands; and that, while this old fence, located on their division line, was rebuilt about twenty-five or thirty years ago, the new fence, replacing it, was placed on practically the same line, because plaintiff's father, A. B. Hill, in rebuilding his part of the division fence, put the new ground rails from the creek to the top of the hill, but "didn't put them exactly in the same bed of the fence" and in some places went across the main fence bed; that he didn't know how much it was changed, but sometimes it "went half on one side and half on the other," but further testified that the new fence is practically in the same place as the old line fence which it replaced.

Further, B. P. Sawyers, when testifying as the defendant Kerr's witness, states that this new division fence line, replacing the old rail fence which marked the division line some twenty-five to thirty years ago, runs on the same line on which the old fence stood; that he knows this because he built the wire part of the new fence and that the plaintiff's father, A. B. Hill, under whom plaintiff claims title, himself there built the rail part of the fence.

Defendant Kerr, both by his own testimony and that of his witnesses, showed record chain of title to the

land involved, extending back to the commonwealth, which commenced with an eighteen acre patent granted by it to Andrew Kerr in 1848, who thereafter, with his wife, in March, 1865, conveyed it to Jacob Stinson, who in turn conveyed this patented land, with other lands, in 1883 to Louisa Carr and Emma Carr (or Kerr), his deed containing this description of the land here involved:

"From the gum corner to the county road, thence a straight line to a white oak; thence crossing the road to a fence, running with said fence to the woods to a stake in the original line."

Also, the defendant Kerr showed that the fence line called for in this boundary had never been moved, but has been repeated in all the deeds as the exterior or division line between his land and the plaintiff's adjoining land and across which the latter now desires to reach and take this one-fourth acre of defendant's land which lies within this fence, but which plaintiff nevertheless claims belongs to him, as coming within his boundary according to a survey made under the calls of the later deeds conveying his tract of land and which call for this fence as the division line between his and the defendant's land.

Turning now our attention to a consideration of the second or Petry branch of the case, wherein plaintiff seeks a like recovery against him for a quarter acre tract, it is to be noted that the defendant Petry, in addition to denying by his answer the plaintiff's title to the one-fourth acre claimed, also pleaded that as the old rail fence, which had for a long period served as marking the divisional line between the Hill and Petry farms, had some years before burned and it was then desired by them to erect a new fence in its place, which would both straighten out the old fence line and be sufficient to "turn" stock, which Petry desired to pasture on that side of his farm, and as they did not either know whether the line of the old fence had correctly marked the division line between their farms, or just where the true line was located, they agreed to settle such uncertain and disputed matter by establishing a new division line between their farms, upon which they would construct, as marking its location, a new fence in replacement of the old one which had burned.

The evidence for defendant, in support of this

pleading, is that as neither Hill nor Petry knew the exact location of the old fence line, or just where its corners were, they decided to call in Hiram Johnson, an old resident and land owner of this locality, to advise them as to where was the location of the old fence line and that he came and pointed out to them, as best he could remember, the corner of the old line separating their farms.

The testimony is further that the plaintiff himself, upon Johnson's locating the old corner, then planted a stone for that corner and also marked two other corners of the new line, then agreed upon, with stones; that they at the time employed neither a surveyor to run the old line nor used any instrument, but that, upon their agreeing upon a new and straight divisional line between them, in lieu of the old, crooked line marked by the burned rail fence, they drove stakes, hacked saplings and set corner stones to designate it and agreed between themselves that each would construct one-half of the new wire fence, which Petry in good faith built, though Hill failed to carry out his part of the agreement.

Further, it appears that about three years after their agreeing upon this new conditional line and after the defendant, Petry, relying thereon, had built a new fence on his half of the length of the line, Hill filed this suit against Petry to quiet his title claimed to about one-fourth of an acre of land, which, according to the evidence, is worth just about $1 in market value. He insistently contends that the new fence, as constructed and run by Petry, cuts off from his land one-fourth of an acre and gives same to Petry, despite the fact that the extension of the other half of the fence, if run up to the end of the conditional line as agreed upon, would result in his taking practically a like amount of Petry's land, as same would be enclosed on appellant's side of the extended fence.

While it is obvious that this suit, brought by Hill against his neighbors, Kerr and Petry, for recovery of a fraction of an acre of poor land (worth, according to the evidence, only about $2), was motivated in its bringing not by some outraged sense of wrong done him or loss suffered, but by bad feeling or hostility arising between him and his neighbors, for the reason that even should he recover the $2 tract sued for he would in no wise be compensated for the expense incurred in prose-

cuting his suit and, also, while it is an ancient maxim of the law that it will not seriously regard a mere trifle, as is the amount here involved, yet, as the subject matter presented by this controversy comes within the statutory exception authorizing an appeal regardless of the smallness of the amount, where the title to real estate is involved, the merit of appellant's contention here presented must nevertheless be considered and determined by us.

The question here submitted is whether or not this conditional line, established by agreement and pursuant to which Petry has built a new fence thereon, is to be upheld as having been established by the parties' agreement, under the circumstances made, even though verbal, or is to be treated as illegal and of no binding effect.

Upon submission of this cause upon the pleadings and this evidence for judgment, the learned chancellor decreed that the agreement, made between Petry and Hill and acted on in good faith by Petry, should be upheld and that plaintiff's petition should be dismissed and that he take nothing thereby. Also, he adjudged that the present old fence line between the farms of the plaintiff and of the defendants, Kerr and wife, had remained fixed and unchanged and is the true and correct line between their farms; and, further, that the conditional line, made and agreed to by the plaintiff Hill and the defendants, Petry and wife, and located as same is now marked by the new wire fence, is also the true and correct boundary line between their farms.

The plaintiff below, Robert M. Hill, has appealed and invites and asks the court, in brief of counsel, to read the record, in search of unspecified errors, for itself and determine if any error has been committed by the chancellor in his decision of this controversy over the location of the conditional or boundary lines between the farm of the appellant and those of the appellees, Kerr and Petry.

Further he states that there is here involved a question of title to only about one-half an acre of land, which serves as the "apple of discord" between these hostile neighbors, bickering in this suit, and the sole and only question presented is whether or not the parties here have legally established by their agreement, when made under the circumstances stated, a conditional or division

line between their farms, where same was only orally agreed to by them.

Appellant maintains that no conditional line, as claimed by Petry, exists, since he contends none of the essentials of an agreed line, here shown and admitted to have been made by parol, are found or present in this case.

In response to this contention urged by appellant, we may state that it is our conclusion, reached in respect to the Kerr branch of the appellant's claim, that no question as to the making of a conditional boundary line by agreement as claimed, whether made by parol or writing, is involved. We find no evidence tending to support the plaintiff's claimed right to recover any part of the Kerr land and are unable to concur with his contention, in that the evidence, we conceive, very amply supports the finding of the chancellor, as stated supra, and leaves our mind in no doubt as to the defendant Kerr's ownership of the entire tract of land lying within the boundary as claimed by him, in that what is termed the divisional line between the two farms, as clearly established by the evidence, represents the fixed and true boundary line, which has extended back for more than fifty years, or, as it appears, even reaches back to a patent granted by the commonwealth in 1848, under which he continues to hold his farm, embracing within its established boundary the one-fourth acre thereof for which appellant here sues and seeks to take from him. Although this one-fourth acre tract lies within a boundary of the farm which appellant insists is only a conditional one, it is quite clearly shown by the evidence that the line, so attacked, is now located and fixed not by oral agreement, but as the same has been called for and located in all the deeds constituting Kerr's claim of title during this long period of years it has been the Kerr or Stinson farm.

The strength or weakness of appellant's claim rests on no stronger foundation than the showing made by the evidence, that by the calls of his junior deeds and by a survey of his land (run by them alone) it was shown that the one-fourth acre tract he sues for is included within the exterior calls of his deed, but which the evidence also shows were never properly located, and which exterior calls overlap defendant's boundary line.

We can not concur in his claim as being either rea-

sonable or legal. For such reason, we are of the opinion that the chancellor's judgment, in denying plaintiff's prayer that his title be quieted in this one-fourth acre tract of his neighbor Kerr's land and dismissing his petition as to it, should be and it is affirmed.

By the second or Petry branch of this case, there is involved the validity and binding effect of a conditional line agreed upon by the parties in settlement of the uncertain or disputed location of an old fence line.

Appellant contends that none of the essentials, as enumerated and required for establishing a valid conditional line where made by parol agreement, were here shown by the evidence to have been present when the parties entered into the claimed agreement therefor, which is here involved.

This court has repeatedly held that a divisional or dividing line, where agreed upon and made under facts similar and analogous to those here presented, may be created verbally, as was here the case.

In Holbrooks et al. v. Wright et al., 187 Ky. 732, 220 S. W. 524, 527, the rule as to this is thus stated:

"Where the dividing line is uncertain, and there is a bona fide dispute as to its location between adjoining landowners, who agree on the dividing line and execute the agreement by marking the line or building a fence thereon such agreement is not prohibited by the statute of frauds, nor is it within the meaning of the provisions of the law regulating the manner of conveying real estate, since parties do not thereby undertake to acquire and pass title to real estate, as must be done by written contract or conveyance, but simply by agreement fix and determine the situation and location of the thing that they already own, the purpose being to identify their several holdings by something agreed on, and to make certain that which they regarded as uncertain; and such an agreement, followed by possession with reference to the boundary so fixed, is conclusive on the parties, although the possession may not have been for the full statutory period, it being sufficient to show that the dividing line was actually established, and thereafter recognized or acquiesced in by the parties for a considerable time. Garvin v. Threlkeld, 173 Ky. 262, 190 S. W. 1092."

See, also, in accord the further cases of Turner v. Spicer, 198 Ky. 739, 249 S. W. 1038; Farley v. Borderland Coal Company, 218 Ky. 779, 292 S. W. 303; and Bordes v. Leece, 183 Ky. 146, 208 S. W. 780.

It is unnecessary to extend the opinion further by setting out the facts in evidence which we find sufficient and effective to satisfy the conditions which the legal principles declared in the cases supra must exist in order to have or constitute an agreed divisional line, where verbally made, legally binding and effective on the parties making it.

The facts here in evidence, as to the circumstances and conditions under which Petry pleads the agreement made for a divisional line, as here entered into by the parties, show that they were at the time ignorant and uncertain as to where the true divisional line was, and that same was acted upon, accepted and participated in, after being so made, for more than a year, which furnished the essentials required for constituting a binding divisional line agreement, in the light of and when measured by the rule as declared in the above quoted and cited cases.

Therefore, it is our conclusion that the judgment of the learned trial court must be and it is affirmed.