# Cassada v. Vanhook.

March 19, 1940.

J. S. Sandusky, Judge.

B. J. Bethurum, J. M. Perkins and W. R. Jones for appellant.
Wesley & Son for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This suit involves the title to a small tract of some seven acres of unfenced woodland lying in Pulaski county, which is claimed by each of the parties, the appellant, John Cassada, and the appellee, Rosa, Vanhook, who was the plaintiff below.

In April, 1937, plaintiff brought this action of trespass against the defendant, John Cassada, seeking recovery of damages for his alleged wrongful cutting and removal of timber from off this small tract, to which she claimed title and ownership.

Plaintiff alleged in her petition that the tract in controversy, from which this timber was cut, was a part of and included within the boundary calls of a 55-acre tract conveyed her in May, 1931, by her father, George McDonald.

The appellant, Cassada, filed answer and counterclaim, admitting the charged cutting and removal of the timber, but denying that same was wrongful or any liability therefor on the ground that plaintiff did not own the tract. He affirmatively alleged that he did own it, it being a part of and included within a certain boundary of land deeded him by Adam Moore and wife in 1914, and further claimed, under his deed, chain of title thereto extending by mesne conveyances back to the commonwealth or a 265 acre patent issued by it in October, 1822, to Landy Newell. He also claimed that he had been "in the actual, peaceable, open, notorious, visible, continuous, uninterrupted adverse possession of the whole of the property," so deeded him by Adam Moore, for more than fifteen years next preceding the beginning of plaintiff's action against him.

Plaintiff's reply contained a traverse of the counterclaim and a claim of title to the tract in controversy by adverse possession.

A rejoinder completed the issue as to the ownership of the tract.

On final submission of the cause on these pleadings and the voluminous proof introduced by the parties in support of their positions, the jury, under the instructions of the court, returned a verdict finding damages for plaintiff as the owner of the tract in question, upon which judgment was duly entered.

It was also adjudged that plaintiff was the owner of the land in controversy and that the divisional boundary line set out in McDonald's deed, conveying the 55 acre tract to his daughter, Rosa Vanhook, in 1931, repre-

sented the true divisional line between the lands of the plaintiff and the appellant, John Cassada.

Cassada has appealed.

The facts as disclosed by the record show that the only tracts of land involved in this suit are the tract conveyed by George McDonald to plaintiff in 1931 and the adjoining tract, a part of the Landy Newell patent, conveyed by Adam Moore and wife to appellant in 1914.

The calls of the McDonald deed, designating the eastern boundary of the 55-acre tract conveyed plaintiff (insofar as the tract adjoins Cassada's land), describe it as extending from a stone, marking its N. E. corner, thence southwardly to a corner marked by "a stone and two gum pointers" and thence again southwardly to Johnathan Blevin's corner. The western boundary line of Cassada's adjoining land is described in both the Moore deed and the Landy Newell patent as located, by beginning at the N. E. corner of the Landy Newell patent, marked by two black oaks (Adam Bryant's corner); thence N. 61 W. 130 poles to a point in that north line, designated as the N. W. corner of said patent, and located therein 130 poles west of the Adam Bryant corner, where same is marked by a poplar and dogwood. From such last named N. W. corner, so located, the line constituting the west boundary of Cassada's land turns and extends southwardly according to the bearings given in the deed and patent, passing through said further designated corners as stated supra.

Upon this pivotal point, as to where is to be located this N. W. corner of the Landy Newell patent called for as stated supra, from which extends southwardly the further line constituting the western boundary of the old Landy Newell patent and of Cassada's land, as a part thereof, turns the decision of the question as to the proper location of the conditional division line, established in 1906 as hereinafter appears by Minton and McDonald, between their adjoining lands.

It is admitted that appellant has record title extending back to the commonwealth or to the Landy Newell patent, describing the west boundary line of his land as stated. Also it is admitted that George McDonald, plaintiff's father and grantor of the 55 acre tract in

question, lying on the west side of this divisional line, did at the time of conveying it to plaintiff in 1931 own a farm consisting of three adjoining tracts, two of which adjoined the small tract in controversy, but that his deeds to those three tracts did not cover nor embrace the tract here involved.

However, in the division of his lands among his children in 1931, he conveyed this 55-acre tract (described as tract No. 2), together with another tract, to plaintiff by a deed, the boundary calls of which not only embraced the two portions thereof to which he held paper title, but also this small tract in controversy, to which he had no record or any title, unless one had been acquired thereto by his claimed continuous, notorious and adverse possession of it for the fifteen year statutory period.

In support of the contention that George McDonald did acquire title to the tract involved by his adverse possession of it for the statutory period, it is shown by the testimony of plaintiff's witnesses that the tract in controversy was never a part of nor embraced within the boundary lines of the Landy Newell patent, but was a part of the Hardin Newell eleven-acre patent issued him by the commonwealth in 1876.

To the end of identifying it as a part of the later Hardin Newell patent, plaintiff introduced in evidence, as tending to establish such fact, the records and maps used in the suit of one St. John Bishop, brought in 1885 against C. M. Newell, son of Hardin Newell, the patentee, seeking damages for the wrongful cutting of timber on this certain part of the Hardin Newell patent. It is contended that the calls and map of the patent establishes it as the same land as that here in controversy.

Assuming, arguendo, that such contention is sustained, it is yet to be observed that in the Bishop suit no judicial determination was made that the portion of the eleven acre Hardin Newell patent there involved belonged to C. N. Newell, as there it only appears that upon the motion of the plaintiff, Bishop, the suit was ordered dismissed as settled, after which C. M. Newell continued to hold possession of it.

Further it is shown that following such determina-

tion of the Bishop suit, Newell and his heirs, when leaving that section of the country in 1902, gave to George McDonald the map and title papers of record used in that suit and put him in possession of the portion of the eleven-acre Hardin Newell patent which was there involved, telling him, it is testified, to use it as his own.

It further appears and is testified by witnesses for plaintiff that George McDonald has since that time continuously and adversely claimed ownership and held possession of this small tract, identified as being the same as that here involved, using and claiming it, notoriously and adversely to all the world, as his own and which, it appears admitted, is located between and adjoins on its west side the McDonald 55-acre tract he held by paper title and also the lands of the defendant, Cassada, on the east.

It is further testified by plaintiff's witnesses that in 1906 a controversy arose between George McDonald and one Dick Minton, whose wife was at that time the owner of the adjoining boundary of land now owned by appellant, Cassada, as to the proper location of the divisional line between their lands, McDonald at the time claiming that his land extended eastward to a point embracing this tract, here involved, as being that part of the Hardin Newell patent involved in the Bishop suit, supra, and of which he had, by Newell, been put in possession.

It is further testified that Minton (acting for his wife, the owner) and McDonald settled their controversy over the proper location of the divisional line between their lands by having the line surveyed and pursuant thereto established an agreed conditional line between their lands, by beginning at a point in the north line call, where, by agreement, the N. W. corner of appellant's adjoining land was located by a poplar (stump) and a dogwood, there found, and from which the divisional line was extended southwardly over a course taking in the known and admitted corners of the west boundary line of the Landy Newell patent, when such agreed location of their dividing line was established by the parties' setting up stones and stakes marking its corners and course as such.

It appears substantially uncontradicted that McDon-

ald and Minton, as well as the latter's successors in title, Moore and Cassada, thereafter observed and respected the location of this divisional line established by Minton and McDonald as the true and proper boundary line between their lands and that each of the parties used and exercised control and dominion as owners over their respective lands as so divided and ending at and controlled by such divisional line.

Some twenty-five years after the establishment of this conditional line, up to which these adjoining landowners had claimed adverse ownership during such period, McDonald deeded to plaintiff the 55 acres above referred to, therein setting out as its eastern boundary the conditional line agreed upon in 1906 between him and Minton.

Appellant earnestly contends that the court egregiously erred in adjudging this conditional line, so fixed and established by them, to be the true divisional line between his and plaintiff's lands and that the land in controversy, thus placed on the west or plaintiff's side of the line, belonged to him.

Appellant, attacking this conclusion, argues that such ruling of the court is unsupported by any sufficient or competent evidence, as showing the establishment of such conditional line, and that the evidence offered in reference to the old Bishop suit and the Hardin Newell eleven-acre patent was alien and outside the scope of and irrelevant to the issues here made and joined by the pleadings.

Further, appellant contends that the Hardin Newell eleven-acre patent, as is conclusively shown by the testimony of his witness and surveyor, Mr. Ashurst, does not lie within the land boundaries of either of the parties, but that it is separate and distinct from each, in that it lies between, yet adjoining on either side the lands of the parties.

We have been favored in our consideration of these claims by some nineteen maps and drawings, tendered for their elucidation and our assistance in determining the proper location of this tract involved and to whom it belongs.

We have very carefully considered all the pleadings

and proof and the many exhibits filed by the parties therewith as aids in determining the merit of the conflicting contentions here urged and are of the opinion that the one pivotal question here presented for our decision is: Did plaintiff acquire title, under the deed of her father, George McDonald, executed her in 1931, to the small woodland tract in controversy, by his including it within the boundary calls set out in his deed to the 55 acre tract thereby conveyed her?

It is admitted that McDonald having no paper title to this woodland tract of some seven acres in controversy, which he included in the boundaries of his deed conveying plaintiff the 55 acre tract, the deed was ineffectual in its attempt to grant her title to that seven acre part of the 55 acre tract conveyed her, unless he, at that time, had acquired title thereto through his alleged adverse possession of it.

The evidence shows that some twenty-five years before the making of this deed to the plaintiff, McDonald was, under claim of right to the tract in controversy, adversely, continuously and notoriously holding possession of the tract as the owner thereof against the appellant Cassada's predecessor in title (Minton's wife) and against the whole world and that because of a controversy arising over his hostile and adverse claim of ownership of the land in dispute, between him and Minton, as to the location of their division line, they by agreement established a conditional boundary line between them, thereby settling the question of their land boundaries. Having so settled this matter, McDonald thereafter continued to hold, as owner thereof, the land in controversy, together with his other lands to which he had title, up to the agreed boundary line established by him and Minton, and such dividing line was thereafter, until McDonald's death in 1936, observed and accepted by McDonald and Minton and his successors in title, Moore and Cassada, as representing the true division line between their adjoining lands.

While the establishment of an agreed conditional line by McDonald and Minton, whose wife owned the land affected thereby, might not have been effective to bind her as settling the location of the agreed boundary of her land, it was yet effective as a notice given her

through her husband, then acting for her, of McDonald's adverse claim of ownership of all the land held by him up to the conditional line from the time same was established in 1906 by setting up stones and stakes, marking its location and course.

The evidence tends substantially to support such showing made as to the character of McDonald's holding of this land in question and his continuous, hostile, notorious and adverse holding of it for a time longer than the fifteen year statutory period; that in fact he so held it, without challenge of his right, for some twenty-five years, or until, claiming to have acquired title to the tract in controversy by such adverse holding of it, he deeded same, together with the other lands then owned by him, to his daughter.

While it is the rule that the owner of a tract, merely by extending its boundaries, does not take such adverse possession of the adjoining land embraced within the extension, overlapping the boundary of the adjoining owner, as would ripen into title, yet, where the dividing line is uncertain and in bona fide dispute as to its location, and a conditional line is established between the adjoining landowners, who agree as to its location and execute the agreement by marking the line, as by setting up stones and stakes at its corner or building a fence, such agreement is not an ineffectual settlement of their boundary controversy, nor is it prohibited by the statute of frauds.

Since the parties do not thereby undertake to acquire and pass title to real estate, "but simply by agreement fix and determine the situation and location of the thing that they already own, the purpose being to identify their several holdings by something agreed on, and to make certain that which they regarded as uncertain; * * * such an agreement, followed by possession with reference to the boundary so fixed, is conclusive on the parties, * * * it being sufficient to show that the dividing line was actually established, and thereafter recognized or acquiesced in by the parties for a considerable time." Holbrooks et al. v. Wright et al., 187 Ky. 732, 220 S. W. 524, 527; Garvin v. Threlkeld, 173 Ky. 262, 190 S. W. 1092; Hill v. Kerr, 277 Ky. 105, 125 S. W. (2d) 1005.

McDonald, in claiming the land (including the tract in controversy) up to the conditional line, was not, as stated in the quoted case, attempting to acquire land belonging to Minton's wife, but to make certain, by agreeing to the establishment of a conditional line between their lands, the boundary of the land he adversely thereby claimed as his own.

The general rule is, as stated in Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S. W. (2d) 48, 53, that:

"To defeat title and constructive possession under a prior patent, a party claiming under a subsequent deed must prove actual, adverse, open, and continuous possession on the part of himself and vendors without lapse of possession for as much as fifteen years before suit. Brown v. Wallace, (Ky.) 116 S. W. 763; Hall v. Blanton, 77 S. W. 1110, 25 Ky. Law Rep. 1400; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062. Also one who has entered upon and cleared land to which he has no title may not extend his possession by merely marking boundary around it. Altoona Trust Co. v. Ison, 170 Ky. 706, 186 S. W. 515; Id., 171 Ky. 217, 188 S. W. 344 * * *. This rule prevails where one goes upon land constructively in the possession of another and merely marks the boundary. Smith v. Berry, 202 Ky. 502, 260 S. W. 348. * * * To acquire title by adverse possession, the possession must not only be actual, but so continued as to furnish a cause of action every day during the whole period prescribed by the statute. Courtney v. Ashcraft, 105 S. W. 106, 31 Ky. Law Rep. 1324; Bibb v. Daniels, 183 Ky. 659, 210 S. W. 454; Mounce v. Hargis, 211 Ky. 761, 278 S. W. 107; Noe v. Russell, 213 Ky. 746, 281 S. W. 1033."

We are of the opinion that the finding of the jury and judgment entered by the court thereon was not out of harmony with these applicable and controlling legal principles quoted supra, in that the evidence abundantly sustained the contention of appellee that in the year 1906, George McDonald and Dick Minton, whose wife owned the land adjoining that which McDonald was claiming, entered into an agreement to settle their controversy as to the dividing line between them, which

agreement, it is testified by witnesses there present, was then executed by designating and marking its corners and course with stones and stakes.

Having done this, it is further practically admitted that McDonald continued to adversely claim ownership of the land, including the boundary here involved, as extending up to this divisional line established by him and Minton and continued to hold to such line without molestation or challenge made of his adverse holding and claim of ownership of the land in controversy up to such line, either by Minton or his successors in title, including the appellant.

Our conclusion in this, in upholding the judgment, is not rested upon the fact, as shown by the evidence, that McDonald did upon various occasions go upon this woodland tract in dispute and cut and remove timber therefrom in varying amounts as desired by him, and that such sporadic action was in itself sufficient to constitute such assertion of adverse possession and claim of ownership to the land in controversy as would ripen into title. But rather we rest our conclusion, just as reached by the trial court, that McDonald's claim of having acquired title by his adverse possession of the land must be and is bottomed upon his alleged continued adverse possession and claim of ownership of the land involved up to the agreed divisional line established between him and the adjoining landowner, Minton, and maintained through the long period intervening between its establishment and his later deeding of the land to plaintiff in 1931.

Such being our conclusion, for the reasons stated, and the trial court's judgment being in harmony with our view, it is therefore affirmed.