AMERICA BRADFORD, ET AL. *v.* JULIA SOUTHGATE.

[Abstract Kentucky Law Reporter, Vol. 4—890.]

**Possession of Land—How Held.**

Where one owns a body of land made up of several contiguous tracts and places a tenant in possession, by such act it is reasonable to suppose he intends to take and hold by them the possession of all of such tracts.

**Title by Adverse Possession.**

Where possession of land under a deed and claim of ownership is taken and held by the owner or his tenants under him, continuously for fifteen years or more, his title is good and he can not be deprived of it.

APPEAL FROM CAMPBELL CIRCUIT COURT.

April 19, 1883.

OPINION BY JUDGE PRYOR:

There is no question but that the deeds to Southgate cover the land in controversy and that he by his tenants was in possession of the Phillips Creek farm. The Daniel conveyance embraces the land in dispute as shown by the survey of Kennedy and that of Boyers.

The only question before the jury was the location of the boundary lines of their respective lands, and it is plain from the testimony that the entry of the appellee or her ancestor by their tenants was long before the entry of the appellants. The proof conduces to show that the appellee's ancestor and the appellee had the actual occupancy for thirty years or more before the entry of appellants or the claiming under them. It is true that the land owned by South-gate was made up of several parcels and the question was whether the entry by his tenants was an entry with a view of taking possession of the entire land or only the particular tract upon which the tenant entered.

It is certain that Southgate was the holder of the legal title for many years, and is equally as well established that tenants at various times were on this land all connected but the title obtained from different parties and at different periods. It is therefore unreasonable to suppose that tenants would be placed on one part of the land with no purpose of taking possession of the whole, and besides this was done long before appellant's entry or that of their ancestor. The appellants fail to show any paper title, and the entry, if made, was within fifteen years prior to the bringing of the action; and if not the title of the appellee covers the land, and she or her ancestor had tenants upon it before the claim of appellants. The only question really for the jury to decide, as already stated, was where the dividing line ran. It is not a violent presumption to say, where one owns a body of land made up of several contiguous tracts and places a tenant in possession, that by this act he intends to and does in fact possess the whole. The land was unenclosed when Bradford claims to have taken possession in 1853, by using wood off of the land and permitting others to do so. This, however, did not divest the appellee of title, and there was no inclosure made until a few years before this suit was brought.

The instructions in the case were certainly as favorable as appellants were entitled to have. For the plaintiff the court told the jury that if appellee's deeds covered the lands (describing them) and Southgate placed a tenant on the land with the intention of taking possession of the whole, and this possession was continued for fifteen years prior to the entry of the appellants or those under whom they claim, the law was for the plaintiff. The appellee having shown a paper title and the possession by a tenant, if the appellant

entered on this possession he acquired no title, unless he had entered and enclosed the land for fifteen years as his own, then to the extent of the enclosure the appellant could not recover. The mere entry into woodland and cutting timber by one without title will not amount to an adverse possession against one who is in possession under a title and claiming to his boundary, and among the entire body of land the entry into one of the tracts with the purpose of taking possession of the whole was in fact the actual occupancy of the whole.

For the defendant the jury was told that, if Bradford entered upon the land prior to January, 1858, and took possession as his own and continued to hold it in that manner up to the bringing of the action, the judgment must be for him; and by another instruction the jury was told if there was no entry on the forty-four-acre tract, the land in dispute, they must find for the defendant, although there was an entry on the one hundred-acre tract.

The conveyance by Daniel to Southgate of the one hundred-acre tract and the forty-four-acre tract was made in the year 1828, and it is certain that Southgate had tenants on this land prior to 1858 and prior to that time. Gelton says he has known the Peter Daniel place since he was nine years old, and was seventy-five when his deposition was taken, and that it had been occupied generally ever since, and don't remember ever to have seen it without an occupant. Carson was on the land as tenant of Southgate in 1855. Grant was agent of Southgate in 1852 and there was then a tenant on the land by the name of Black, holding under Southgate, whom he turned out for his failure to pay rent and then placed another tenant in possession. Southgate then had a title and was in possession, and an entry into the unenclosed part of the land by Bradley gave him no possession adverse to Southgate; and the title being made in 1828 of both tracts they should have been considered as one, and the possession and occupancy of one part of the boundary the possession of the whole unless the tenant was restricted by his contract. We think the instructions were more favorable for the appellant than they should have been, and the jury determining that the deeds to Southgate covered the land and such being the proof the appellee was entitled to a verdict. The admission of deeds that were not read, or if read failed to embrace the land, did not prejudice appellants' case, and in fact it was proper that all of the deeds should have been read

to show the boundary claimed. There is no error in the record to appellants' prejudice and the judgment is *affirmed*.

*E. W. Hawkins, for appellants.*
*O'Hara & Bryan, for appellee.*