## Ramsey, et al. v. Thomas, et al.

(Decided October 20, 1910.)

### Appeal from Jackson Circuit Court.

1.  Adverse Possession by Junior Title Holder.—To enable a junior title holder to hold by adverse possession a tract of land embraced by a senior title, it is necessary that he should actually occupy the land and remain in actual possession continuously for fifteen years, claiming the same to a well-defined boundary. The fact that he resides on and has actual possession of an adjacent tract will not give him adverse possession of the tract covered by the senior title, although he may claim to own it in connection with his other land.

2.  Constructive Possession Follows Title.—The owner of the legal title to land is in the constructive possession of it although he may never actually occupy it; and this constructive possession cannot be defeated by adverse possession, unless it be an actual occupancy of the land.

J. R. LLEWELLYN for appellants.

A. W. BAKER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This ordinary action was brought by the appellees against 'the appellants to recover the possession of a tract of land and damages for its detention.

The answer of the appellants was a traverse, and plea of ownership based upon adverse possession.

The case by agreement of the parties was transferred

to equity and upon a hearing judgment was rendered in favor of the appellees, plaintiffs below. Claiming that the judgment should have been in their favor, the appellants ask its reversal.

Briefly stated, the facts are these: In 1871 and prior thereto one Michael McKinney owned and lived on a tract of land containing some 200 acres. In 1871 he purchased the tract now in controversy which adjoined his other land and had it conveyed to his minor son James McKinney by a deed which was duly recorded. In 1875 Michael McKinney sold to Wiley Reed all the land he owned, as well as that which had been conveyed to his son James.

The appellees claim the land in controversy as the vendees of James McKinney and through him trace their title to the commonwealth; and the appellants claim as the vendees of Reed. It will thus be seen that appellees rely upon a paper title, while the appellants depend upon adverse possession as they can show no paper title back · of Reed.

The evidence shows that Michael McKinney after the purchase and conveyance of it to his minor son James, claimed the land in controversy and exercised occasional acts of ownership over it, and in one corner of it erected a mill; but he never lived on or had actual possession of any part of the land except that upon which he erected the mill. After Reed obtained a conveyance from Michael McKinney, and in 1879, he sold about four acres of the land to which James McKinney had title, including the mill; and the part so sold is not in controversy in this action as the appellees do not assert title to it. Neither Reed nor his vendees, except the appellants who obtained title in 1896, ever lived on or had actual possession of any of the land in dispute after Reed sold the mill site. The land was never enclosed or its boundary marked, but there is evidence that McKinney and his vendees made occasional entries upon it for the purpose of cutting timber, and at one time while Michael McKinney claimed it a small portion of it was cleared and for probably a year two women lived on it. In short, the evidence for the appellees shows that although they have a perfect paper title to the land, they were never in the actual possession of any part of it, either by themselves or tenants. While the evidence for the appellants shows that although they have no paper title, the land has been claimed by them and their vendors for as much as thirty

years, this claim being accompanied by occasional entries
and the occasional cutting of timber; and in addition
thereto, there was an actual possession by virtue of the
mill erected by Michael McKinney about the year 1871
and from that time until 'the mill site was sold by Reed
in 1879.

The law applicable to this case, as we understand it,
may be thus stated: The legal title carries with it the
constructive possession of the land embraced by the title,
and under this constructive possession the legal title
owner may hold the land, without ever taking actual
possession of any part of it, against any other person
who obtains a junior title to it without following it up by
actual possession. So that, in this case the appellees by
virtue of their paper title had at all times the construc-
tive possession of the land in dispute, and this construc-
tive possession could not be disturbed by the appellants
or their vendors who had the junior title unless they
took actual possession of the land, to which appellees
had the senior title. The mere fact that Michael McKin-
ney and his vendees lived on adjoining land and asserted
claim to the land in controversy, and made occasion-
al entries thereon to cut timber, did not have the effect
of putting them in the adverse possession of it, so as to
enable them to rely on adverse possession as a defense
to a recovery by the legal title holder. If Michael Mc-
Kinney or his vendees had actually settled on or taken
actual possession of the land in dispute, or any part
thereof, and remained in the actual possession thereof,
continuously for fifteen years, claiming to own and hold
adversely the whole tract to a well defined boundary, then
their actual possession during this time, although it may
have been to only a part of the land, would have extended
to the whole of the land and have been sufficient to defeat
upon the ground of adverse possession a recovery by the
appellees. But, as we have seen, there was no actual pos-
session of this land, or any part thereof, for fifteen years
by Michael McKinney or any of his vendees. The erec-
tion of the mill upon this land by Michael McKinney
started his title to adverse possession, and if the land
upon which the mill stood had been retained by Reed and
his vendees 'for as much as fifteen years, this together
with the adverse claim of the whole tract to a well
defined boundary would have been such actual posses-
sion of the land as would enable them to hold it against
the senior title. But the land upon which the mill stood

was sold by Reed in 1879, about eight years after it was erected, and when Reed conveyed this part of the land he surrendered his actual possession of any part of it and extinguished the claim to adverse possession that had begun with the actual entry of Michael McKinney in erecting the mill. Thereafter, neither Reed nor his vendees were in the actual possession of any part of the land. This being so, the mere fact that Reed and his vendees claimed the land did not have the effect of defeating the constructive possession and title of the persons who had the senior legal title. Hall v. Blanton, 25 Ky. Law Rep. 1400 and cases therein cited.

In Brown v. Wallace, 116 S. W. 763, Brown occupied almost exactly the position that appellants hold in this case, and Wallace as the senior title holder under the Flynn patent was in the same position as the appellees here. The facts in the two cases are almost identical and the court in deciding in favor of Wallace, used the following language, which is pertinent to a decision of this case:

"In order to defeat appellee's (Wallace) title and constructive possession under and by virtue of the elder or Flynn patent, it was necessary for appellant (Brown) to prove actual adverse and continuous possession on the part of himself and vendors within the lap of the patents for as much as fifteen years before the institution of this action. This he did not do."

Perceiving no error, the judgment of the lower court is affirmed.