### LIBERTY COAL & COKE CO. et al. v. LEWIS et al.

District Court, E. D. Kentucky.

Sept. 8, 1931.

N. R. Patterson, of Pineville, Ky., for plaintiffs.

Hiram H. Owen, of Barbourville, Ky., for defendants.

ANDREW M. J. COCHRAN, District Judge.

This suit is before me on final hearing and for judgment. It involves a controversy as to the title to a parcel of land estimated to contain 600 acres on the waters of Stinking creek in Knox county in this district. I will first state the defendants' claim thereto. They claim it under a patent from the commonwealth of Kentucky to John Hunter, issued October 28, 1797, on a survey made March 15, 1797, for 5,619 acres. The claim is that the 600 acres in controversy is part of this larger boundary of 5,619 acres and covered by that patent, and that defendants to the extent of the 600 acres connect therewith by a regular chain of title papers. The immediate deed to them was made by R. L. Blakeman February 23, 1929. It was for the 600 acres only. Just after its making they entered on the land and thereby brought about the bringing of this suit on March 8, 1929. The deed to Blakeman was for the entire Hunter boundary of 5,619 acres. It was made May 7, 1920, by J. R. Jones, master commissioner of the Knox circuit court, in a suit brought therein March 3, 1919, under the provisions of sections 4076h and 4076k of the Kentucky Statutes for the forfeiture and sale thereof for nonpayment of taxes. Possibly some question may be made as to whether this patent covers the 600 acres in controversy. It is described as lying on the waters of the South fork of Kentucky river, whereas the 600 acres lies wholly on the waters of the Cumberland river. But this circumstance alone is not sufficient to require a holding that the patent boundary does not cover it.

The plaintiffs' claim is based on adverse possession. They claim that, at the time of the institution of the forfeiture proceedings under which defendants claim, they were in the actual adverse possession of the 600 acres under claim and color of title of record, and they and those under whom they claim had had such possession and paid all the taxes thereupon continuously for a period of more than 5 years prior thereto, and that by reason thereof and of the statutory provisions aforesaid the title to all of the 600 acres became and was vested in them by virtue of that forfeiture proceeding. I think that this claim is established by the evidence. It is further established thereby that, at the time of the institution of that proceeding, plaintiffs and those under whom they claim had been in the actual adverse possession of the 600 acres for more than fifteen years prior thereto, and by virtue thereof had become the fee-simple owners thereof and same was not subject to forfeiture and sale thereby. I think that plaintiffs' pleadings according to a fair interpretation thereof set up this claim also. The 600 acres are a part of a boundary of 5,600 acres claimed by plaintiffs and their predecessors under color of title lying mostly in Bell county, but 1,182.72 acres whereof lie in Knox county on the head of Moore's creek and Roaring fork of Stinking creek. They, i. e., plaintiffs and their predecessors, acquired and held such adverse possession of the 600 acres through the tenancy of Sam Hensley and his father on the head of Moore's creek, and that of Patsy Grubbs and her husband on the head of Roaring fork,' if not also by virtue of the tenancy of those occupying that portion of the 5,600 acres in Bell county. The tenancies of the Hensleys and of the Grubbs had existed for ·more than 25 years prior to the institution of the forfeiture proceeding. The defendants claim that no part of the 600 acres in dispute is within the inclosures of either tenancy. It would seem that the boundary of the 600 acres was gotten up to exclude same. It is just a little more than one-half of the land claimed by plaintiffs in Knox county. It should have been shown just what portion thereof was covered by the 600 acres and the relation thereof to those inclosures. But the actual adverse possession of the plaintiffs and those under whom they claim was not limited to those inclosures. It included the 600 acres as well.

The plaintiffs cite thirteen decisions in support of this proposition, to wit: "Possession under lease of an enclosure does not aid possession of a larger boundary in which the enclosure lies." Those decisions are Tennis Coal Co. v. Sackett, 172 Ky. 747, 190 S. W. 130, 138, Ann. Cas. 1917E, 629; Kentucky Union Co. v. Hevner, 210 Ky. 121, 275 S. W. 513; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 810, 811, 812, 144 S. W. 2; McCoy v. Thompson, 172 Ky. 798, 189 S. W. 1139; Bowling v. Breathitt Coal, etc., Co., 134 Ky. 252, 120 S. W. 317; Altoona Trust Co. v. Ison, 170 Ky. 706, 711, 186 S. W. 515; Swift Coal & Timber Co. v. Ison, 231 Ky. 408, 409 and 412, 21 S.W.(2d) 659; Denney v. Abbott, 163 Ky. 500, 501, 173 S. W. 1159; Ramsey v. Thomas, 140 Ky. 358, 131 S. W. 11; Burnett v. Miller, 174 Ky. 97, 98, 191 S. W. 659; Miniard v. Napier, 167 Ky. 215, 180

S. W. 363; War Fork Land Co. v. Marcum, 180 Ky. 362, 202 S. W. 668; Bird v. McHargue, 182 Ky. 28, 29, 205 S. W. 957.

Neither one of these decisions support this proposition. There is nothing in either one of them bearing on the question as to the extent of possession acquired by the lessor by virtue of the entry by his lessee on land claimed by him. I will undertake to set forth the law on this subject.

In 1 R. C. L. p. 727 it is said: "One who enters upon land under color of title is presumed to have entered in accordance therewith; and, therefore, his actual possession of a portion of the property will, by presumption of law, be constructively extended to the boundaries defined by his color of title, excepting in so far as the land so included is in the adverse possession of another."

In the case of Treece v. American Association, 122 F. 598, 602, a decision of the Appellate Court of this circuit, arising in Tennessee, the matter is thus put: "It is undoubtedly true that an entry under an assurance of title, containing specific metes and bounds, there being no other adverse possession, gives a possession which is deemed to extend to the whole tract, though only a very small part is actually occupied."

The law as thus stated has been frequently so stated and applied by the Court of Appeals of Kentucky. In the case of Tennis Coal Co. v. Sackett, the first of the thirteen decisions cited by defendants, we have this statement: "One having a color of title may have an actual possession, by construction, to parts of a tract of land by entering thereon with the intention to take and hold possession to the extent of the boundaries of the deed, patent, or other instrument which gives color of title. He is then in the actual possession of the portion of the premises which he occupies and in the actual possession, by construction, of the remainder of the tract, where same is not in the possession of another."

Eleven previous decisions of the court are cited in support of this statement. Statements to this same effect may be found in the other decisions cited by defendants. This may be taken to be the law where the entry and occupation is by the claimant himself either personally or by agent. What is the law where the entry and occupation is by a tenant of the claimant?

In 2 C. J. p. 246, § 542, it is said: "Within in the rules that actual possession of part of a tract of land under color of title gives constructive possession to the extent of the boundaries designated in the conveyance, the possession of a part of tract of land by a tenant of the holder of color of title, who has been put into possession under a lease which does not restrict the possession to any definite part of the tract, will give the lessor constructive possession coextensive with the boundaries of the deed since the possession of the tenant inures to the benefit of the lessor and it is not material that only a small part of the land is actually occupied. It has also been held in a number of decisions that even though the lease restricts the possession of the tenant to a definite portion of the tract possession will by construction be extended to the boundaries of the deed under which the lessor claims, provided, of course, no one else is in actual possession of the balance of the tract. And in other decisions, where the opinion does not show definitely whether the lease contained such a restriction the rule is broadly stated that the possession by the tenant is co-extensive with the boundaries of the lessor's deed. On the other hand there are numerous decisions to the effect that where the lessee is let into possession of a part of a tract under an instrument describing it by specific metes and bounds, the lessee's possession is coextensive only with those metes and bounds and is not available to establish a possession of his landlord other than within such metes and bounds."

The Law in Tennessee is in accord with this last statement. It is thus set forth in the case of Treece v. American Association, supra:

"The rule is admirably stated by Judge Neal in Cowan v. Hatcher [(Tenn. Ch. App.) 59 S. W. 689], cited above, when he says:

"'A lease of a piece of land by prescribed boundaries within a larger tract will not, even though entered upon and held, effect a possession of any other part of the tract than such small piece, and will not extend possession by construction to the boundaries of the larger tract, of which such smaller piece is a part. * * * But if a landlord settles his tenant without bounds upon a tract of land, he is in possession to the limits of the title papers under which he claims.'

"In Ross v. Cobb [9 Yerg. (Tenn.) 463], cited above, the jury were instructed; 'That a possession by a tenant of part of the interference covered by the 1,000-acre grant would be a possession to the extent of the boundaries of that grant. Although the lease to him was only 15 acres, it would be a possession taken by Blair by virtue of his grant.'

"This was held to be error, and the judgment reversed; the court saying:

" 'A lease of fifteen acres, defined by prescribed boundaries possessed by the lessee, would not be a possession of any other part of the tract than the fifteen acres. [Ellicott v. Pearl] 10 Pet. 444, 9 L. Ed. 475. But if a lease was made of a tract, and no boundaries were inserted circumscribing the tenant, then a possession under such a lease would be a possession of the whole tract, although the lessee might actually occupy only 15 acres.' "

To the same effect see Bell v. North American Coal & Coke Co. (C. C. A.) 155 F. 712. The law of Kentucky on this point may be gathered from these decisions, to wit: Bowman v. Bartlet, 3 A. K. Marsh. (Ky.) 86, 99; Jones v. Chiles, 2 Dana (Ky.) 25, 29; Chiles v. Conley's Heirs, 9 Dana (Ky.) 385, 388; Wickliffe v. Ensor, 9 B. Mon. (Ky.) 253, 258; Bradford v. Southgate, 4 Ky. Law Rep. 890; Krauth v. Hahn, 139 Ky. 607, 65 S. W. 18, 20.

In Bowman v. Bartlet the matter is thus put: "The court below, in answer to this motion, gave instructions, of which the plaintiff cannot complain, to wit, that if Bowman, either by himself or tenant, entered upon and possessed any part of his patent in the name of the whole, and with intent to possess the whole, it should be considered as a possession of the whole. On the contrary, that an entry on a definite part, with a view to possess such part only, should be considered as a possession of that part alone, and this would be especially true with regard to a tenant settled there. The correctness of this decision is not complained of by the other side, nor are we disposed to impugn it. But it gave the plaintiff the full benefit of all that the law could give him upon the circumstances of this case."

In Jones v. Chiles, we have this: "The extent of possession depends upon the quo animo of the entry. It cannot be supposed that Steen intended to extend his possession beyond his purchase, and how his limited possession can be made a possession in fact of lands not actually occupied by the vendor, it would be hard to show upon any legal principle. A landlord who settles a tenant, without bounds, upon a tract, is in possession to the limits of the claim. A patentee extending shelter to an occupant whose possession is meted and bounded, acquires thereby a possession only to the limits of the occupant's claim."

This case did not involve an entry into a part specifically meted and bounded by a tenant of the claimant, but by his vendee. It was assumed that in the former case the claimants, i. e. the landlord's possession, would be limited to the part, and that, therefore, in the latter case, the possession of the claimant, i. e., the vendor, would extend farther.

In Chiles v. Conley's Heirs, it was said: "We think that as he was clearly proved to have been, by his tenants, in the actual occupancy of some portions of the tract when this action was commenced, he must be deemed to have been in the possession of the whole, unless some part of it was shown to have been in the possession of some one else. And as there is no evidence on which the jury could have found that any one else was in possession, there was no pretext for limiting the right of recovery on the ground of his possession not extending to the whole."

In Wickliffe v. Ensor, the statement is: "The principle is settled, that when the patentee settles a tenant upon the land, without limiting his possession, the patentee is considered as matter of law, to be in possession to the extent of his patent boundary."

In Bradford v. Southgate, it was held that: "Where one who owns a body of land made up of several contiguous tracts places a tenant in possession of one of the tracts, it is not a violent presumption to say that by this act he intends to, and does, in fact put the tenant in possession of the whole."

It will be noted that the statement speaks of an owner, not of a claimant. And I have the impression that it has been held by the Court of Appeals that, where one claims a body of land made up of several tracts enters himself on one of the tracts, his possession goes no farther than such tract. The necessities of this case do not require that I attempt to verify this impression.

And in Krauth v. Hahn, it was said: "If the deed from Eaves' heirs to appellants included the land in dispute, and appellants, by their agents or tenants, lived upon a part of the land embraced by their deed, they are held to have had constructive possession of all the land within their deed that was not in the actual possession of appellees."

These are all the expressions of the Court of Appeals on this subject which I have been able to find. Possibly it is not certain what is the proper deduction to be made therefrom in regard to the law thereof. I have the impression that were the question squarely before it as to the effect of occupation by one of a part of a specific boundary of land claimed by another by color of title under a

lease describing it by specific metes and bounds, it would hold that such occupation would give the claimant and lessor actual possession by construction of the whole of the boundary claimed by him. In other words, that it would make no difference as to the effect of the occupation of a specific part of such boundary whether it is by himself, by his agent, or by his tenant. But it is not necessary for me to commit myself on this proposition here. For in neither of the tenancies in this case was there a limitation of the tenancy to a specific part of the land claimed by plaintiffs and their predecessors. The evidence discloses more as to the tenancy of Sam Hensley and his father than as to the others. He testified on direct examination that he and his father before him occupied and kept possession of the land for the plaintiffs and their predecessors getting what was made by paying $25 a year as rent, and that there were 75 acres of cleared and fenced fields. On cross-examination he testified that the rental which he paid gave him a right to all he tended; that he had a right to pasture all he wanted to that was fenced or outside either; that he always determined what field he would tend; that he paid his rent and did as he pleased; that he had six or seven fields fenced in different fields; that the biggest portion of them is in Knox county, but that he has three fields in Bell containing something like 18 or 20 acres; that there was land fenced when his father was the tenant and, that he had kept fencing and clearing more; that he had cleared the most of it all along since he was a boy; that the least he had cleared in Knox county was 6 or 7 acres 8 or 10 years before; that he cleared seven acres in Bell county last winter; that he himself had cleared in all 30 or 35 acres; that he had extended his fences and cleared the land within them and had cleared strips around the fences where there was no valuable timber; that he had no lease except that 12 or 14 years before one was made to him, in view of the fact that the plaintiffs or their predecessors were contemplating selling or had sold some timber on the land claimed by them or it and for the purpose of providing for the moving of the timber through his possession anywhere they wanted to; and that otherwise all he had to show for his rights were the receipts given for the rent when paid.

The evidence discloses very little as to the tenancy of Patsy Grubbs and her husband, There is nothing to show or any reason to think that same was limited to any specific boundary. It is likely that it was of the same indefinite character as that of the Hensleys. I do not find it necessary to make any statement as to the showing made by the evidence as to the tenancies under plaintiffs and their predecessors in Bell county within the Hensley boundary.

The plaintiffs are entitled to judgment.